HOOKSETT v. AMOSKEAG MANUFACTURING COMPANY.

A town has such an interest in the roadways and bridges which it has erected for its public highways, that it can maintain an action upon the case against a wrong-doer, for the destruction of such a roadway and bridge.

Where in such an action the declaration set out in one count that the town was possessed of such highway and bridge, and in another count that the town was the owner of the same : — *Held*, that, as against a mere wrong-doer, the interest of the town in the highway and bridge was well enough set forth.

Where the instructions given to the jury were correct, the verdict will not be set aside because they were not so specific as they might properly have been made, unless a request for more definite instructions was made.

A corporation, authorized by its charter to erect and maintain such dams across the Merrimack river at A. as it should deem necessary and proper for carrying on its works, erected a dam across the river at A., and thereby caused the water to be thrown back upon a bridge across the river in a public highway in the town of H., and thereby caused the destruction of the bridge : — *Held,* that this charter furnished no defense to such corporation in an action brought against it by the town of H., for throwing back the water upon the bridge, and thereby causing it to be destroyed.

In such case, if the defendants show no right, by prescription or otherwise, to throw back the water, it is immaterial at what time the defendants first began to flow the land where the bridge was situated.

Instructions to the jury are to be considered and construed in connection with and in reference to the evidence.

Where the wrongful act of the defendants was the proximate cause of an injury to the plaintiff, the defendants are liable, although other causes, for which the plaintiff is not in fault, may have contributed to that injury.

THIS was an action on the case to recover damages for the loss of the plaintiffs' bridge, which it was alleged the defendants had carried away by erecting a stone dam across the Merrimack river at Manchester, and putting upon it and maintaining there certain flash-boards, and thereby raising the water in said river so as to throw it back around the piers and abutments of the bridge, and to so pond the water there about the said piers and abutments as to cause the ice to freeze thicker and more extensively about them than it had before done, so that the bridge in consequence was carried away.

There were several counts in the writ in which the plaintiffs' title to the bridge and the particular manner in which the maintaining of said dam and flash-boards caused the destruction of the plaintiffs' bridge were set out. The writ was referred to as part of the case.

It appeared that in 1804 the Londonderry Turnpike Incorporation was chartered by the Legislature of this State, and they were, by this charter and subsequent amendments, authorized to lay out, build and maintain a bridge across Merrimack river, at the place where the bridge in question stood, to take tolls, and to own real estate for a toll-house and dwelling-house, not exceeding in all the sum of $2,000.

It appeared that under this charter said company had proceeded and built their road, and constructed a bridge on the same place of the one in question, with abutments and piers, and had maintained it there until 1855, when, upon proper proceedings in court, and upon the report of the road commissioners, this bridge and a short space at either end of it was laid out as a public highway, the other portion of said turnpike road having been made public prior to that time.

The commissioners, in their report, award damages as follows : " To the Londonderry Turnpike Incorporation, for their corporate franchise, rights, and privileges in, unto, and connected with the bridge part of said highway, and for their easement, interest, and franchise in and to land on which the aforesaid bridge is situated, with the bridge on the same part of said highway, and the land passed over by said bridge and each end of the same, and the land passed over by said highway, the sum of $1,600, to be paid by said town of Hooksett," &c.

The plaintiffs claimed that said Turnpike Company owned the land on which the bridge stood (though they showed no title but possession for the purposes of their road), and by this laying out of the highway over it the absolute right in the land vested in the town. But the court ruled and instructed the jury, that whatever right or title the Turnpike Company may have had in the land on which their bridge stood, the only rights acquired by the laying out of the public highway were, first, the right of way for the public, or the public easement; second, a qualified right in the town to the bridge, the piers and the abutments which the Turnpike Company had constructed, which would be the same in this case as though the public highway had been laid out anew over the land of an individual, and the town had gone on and built the road, the bridge, piers, &c., themselves; but that the fee, the reversionary interest in the land, would not vest in the town by any proceedings of the commissioners in the case, but that this would remain in the hands of the owner prior to such proceedings of the commissioners, whether the Turnpike Company or an individual may have been such owner.

The plaintiffs, in some of the counts in their declaration, set forth. "that they were possessed of a highway and bridge over and across Merrimack river, in Hooksett, with the piers and abutments, over which bridge and highway the public had a right to pass," &c.; and in other counts they set forth "that they were the owners" of said bridge, piers, abutments and highway, &c. The court held that the plaintiffs' title (being only the qualified right above described) was sufficiently stated in all the counts in the plaintiffs' declaration to entitle the plaintiffs to recover, provided they made a good case on all other grounds; to which last ruling the defendants excepted.

The defendants introduced their charter from the Legislature of this State, which, after incorporating them into a company, and with some amendments, giving them the right to engage in the manufacture of cotton, woolen, wood, iron, &c., &c., and the right to purchase, hold and convey real estate at Amoskeag Falls, authorized them to erect and maintain such dams across the river at Amoskeag Falls as they should deem necessary and proper for the carrying on of their said works. This portion of the defendants' charter was referred to as a part of this case. The defendants claimed that, if their dam erected across the river at Amoskeag Falls was suitable and proper for the works erected under and according to their charter, they would not be liable if they did flow back the water upon the plaintiffs' bridge, and especially if the jury should find that the dam and flash-boards, and the manner of using the water was the same when the bridge was carried off as when it was laid out by the road commissioners. But the court instructed the jury that the question whether the defendants' charter would be a protection against an indictment for obstructing the river, which is a public highway, or against an indictment for flowing a public highway laid by law, and thus obstructing the use of it by the public — in other words, against an indictment of their dam as a public nuisance — did not here arise. Neither did the question whether the defendants would not be liable, notwithstanding their

charter, to any individual or company whose land they should flow by their dam and flash-boards, whether such flowage caused such owner any appreciable actual damage, or was only such an invasion or infringement of his rights as would, by lapse of time, ripen into an easement, without other actual damage; but that the town in this case, while they could not recover merely nominal damages for the infringement of a right without any actual damage, were entitled to recover for any actual damage to their bridge, or piers, or abutments, by the raising of the water in the river above its natural pitch before the defendants' dam was built, whether such raising of the water in the river was commenced after the bridge was laid out as a public highway or before, provided the defendant company had gained no rights by prescription; to which ruling the defendants excepted.

The only actual damage sought to be recovered in this suit was for carrying away the plaintiffs' bridge; and the court instructed the jury that the only question upon the evidence was, whether the acts of the defendants, in building their dam or keeping up their flash-boards, or both, had caused the carrying away of the plaintiffs' bridge. If they had, then the defendants would be liable for all the damages the plaintiffs had suffered in the loss of the bridge, and if they had not thus caused the bridge to be carried away, they would not be liable at all.

After the jury had been out several hours, they addressed to the court the following note in writing: namely, "If we find that the Amoskeag Corporation is in part responsible for the carrying away of the bridge, can we assess the damages accordingly?" And the court returned to the jury the following instructions: "If the bridge would not have been carried off but for the acts of the defendants, then they are liable, even though other causes may have contributed to the result. But if the freshet would have carried off the bridge, and did do it, without regard to the thickness or extent of the ice directly above the bridge, then the defendants are not liable;" to which instructions the defendants excepted. And a verdict having been returned for the plaintiffs, the defendants moved to set the same aside, for the reasons above set forth.

*George, Foster & Sanborn*, with whom was *Perley*, for the defendants.

It would seem clear that, on the laying out of the bridge by the road commissioners in 1855, the "public acquired an easement merely—the right to use the road for passing and repassing"—and the title to the soil remained in the owner. *Troy* v. *Cheshire Railroad Co.*, 23 N. H. 93, and cases cited; *Central Bridge Corporation* v. *City of Lowell*, Mass., Middlesex County, June Term 1860; *Harrison* v. *Parker*, 6 East 154; *Peck* v. *Smith*, 1 Conn. 103.

The Legislature had lawfully granted to the defendants the right to erect and maintain their dam; *Boston & Roxbury Mill-Dam Co.* v. *Newman*, 12 Pick. 457; and the dam having a lawful existence, so far as concerned Hooksett, in 1855, when the bridge was laid out as a public highway, whatever rights the town acquired in the

bridge were subject to all existing rights; for the commissioners did not attempt to take away any of the rights granted to the defendants, nor did they award any damage therefor. If the defendants had purchased all the land on either side of the river between Manchester and Hooksett, and had erected their dam so as to flow only their own land, and this highway had then been laid across the river upon the defendants' land, the instructions of the court would render the defendants liable for damage occasioned by keeping the water precisely as it was at the time the highway acquired a legal existence, a position which we suppose could not be maintained upon any sound theory.

The right of the defendants to maintain their dam may have been acquired, first, by prescription, second, by direct grant from the State. And the instructions of the court would seem to be predicated upon the idea that the former was a more effective method of acquiring flowage rights than the latter, while we suppose the rights of the defendants are precisely the same in either case. Prescription presupposes a grant; and the instructions of the court, " provided the defendant company had gained no rights by prescription," would seem to indicate that the highway was laid out subject to all rights acquired by prescription; and if a presumptive grant would protect the defendants, so much the more should they be protected under a direct grant from the Legislature.

*Parker & Johnson,* and *Joel Parker,* for the plaintiffs.

BARTLETT, J. When a highway is laid out in a town over the land of any individual, he in general remains the owner of the fee in the land subject to the highway. By the laying out there is taken from him " a right of way for the public," that is, a right for any individual of the public to pass, and also a right to put and keep the land over which the highway is laid in suitable condition for the public travel. This latter right is vested in the town by the law, which imposes upon it the duty of making and maintaining the highway, and consequently, by implication, gives to it every thing necessary to the performance of that duty. By virtue of this right the town may make such embankments and excavations upon, and annex such structures to the land over which the highway is laid, as may be necessary to the construction of a suitable path for the public travel. As the town is bound to maintain and preserve such embankments, excavations and structures, so far as they are necessary to the public safety and convenience in the use of the highway, it acquires or retains an interest or ownership in them, as an indispensable requisite to the performance of this duty; and as the highway may exist for an indefinite time, the interest and ownership may be permanent. This interest of the town in the roadway, bridges, &c., constructed by it for the highway, is said to be qualified; because the materials generally are annexed to or are part of the land of another, who will have the entire right to the land whenever the highway ceases to exist, and, also, because of the public use to which such roadway, bridges, &c., are subjected, and

for which they were constructed. But, while the highway exists, the land-owner has no ownership in the highway or bridge, as such. He may own the soil subject to the highway, but he does not own the highway. Nor has that indefinite body, termed the public, any ownership in the highway or bridge. There exists a public right of passage upon them, but this is merely a right for any individual having lawful occasion to pass over the highway to use them for that purpose. If neither the land-owner nor the public have any ownership in the highway, as such, there can be no other owner of it than the town; and in the present case we think the town of Hooksett, even though it may not have owned or possessed the land, was well enough set out in the various counts of the declaration as the owner and as the possessor of the highway and bridge in question, at least as against mere wrong-doers, such as upon the verdict the defendants must be taken to have been. *Troy* v. *Cheshire Railroad*, 23 N. H. 83, and cases cited. These views seem to us supported by analogous cases of turnpike, railroad, and bridge corporations.

The case of *Peck* v. *Jones*, 1 Conn. 103, which is relied on by the defendants, is not, we think, in point; for there the court, after construing a particular deed, merely decided that the fee in the land over which the highway was laid was in the land-owner, and that he might maintain trespass against a wrong-doer who was in occupation of the land. A manuscript copy of the opinion of the Supreme Judicial Court of Massachusetts in *Central Bridge Corporation* v. *Lowell*, Middlesex County, June Term 1860, has been shown to us. In that case it seems the city of Lowell, agreeably to the laws of the State, had taken and laid out for a town way the bridge erected by the petitioners, under their charter from the State. The principal question before the court was, what rule of damages would give the petitioners a just compensation for the property taken, where their right "in the franchise, including the right to take tolls, and the bridge and all its fixtures as incident thereto," was determinable and redeemable in certain modes fixed by the laws of the State. We do not understand this case to be an authority for this position of the defendants.

The defendants object that the instructions of the court allowed the plaintiffs to recover for the value of the bridge. Whether such instructions would have been correct in the present case we need not inquire; for the effect of the instructions given was, that the defendants were liable, if at all, for all the damage which the plaintiffs had suffered in the loss of the bridge. These instructions seem to us correct. If the defendants had desired to raise the question suggested, they should have asked for more specific instructions as to how that damage was to be estimated. *Wright* v. *Boynton*, 37 N. H. 22.

Although their charter might protect the defendants from an indictment for nuisance, it gives them no right to throw back the water upon the lands of others to their injury ; and for such flowage the defendants are liable, notwithstanding their charter. Ang. on Water-courses, sec. 476 ; *Crittenden* v. *Wilson*, 5 Cow. 165 ; *Peti-*

*tion of Mt. Washington Co.*, 35 N. H. 134 ; *Thaxter* v. *Bridge*, 18 Pick. 503. We think that, so far as may be necessary to the maintenance of the bridge, the rights of the plaintiffs are no less than those of the land-owner, as the plaintiffs took from him such rights by the laying out. If the bridge was destroyed by wrongful flowage caused by the defendants, it seems to us that the plaintiffs are as much entitled to recover as if their bridge had been destroyed by any other wrongful act, such as the careless or negligent management of logs driven in the river. *Sewall's Falls Bridge* v. *Fisk*, 23 N. H. 172. The only right to throw back the water upon the plaintiffs' bridge, stated in the case to have been set up by the defendants, was under their charter ; but we should infer from the instructions of the court that there was some evidence upon which the defendants claimed a prescriptive right for such flowage. If there was not, the remark of the court as to prescription was merely immaterial, and could not have been prejudicial to the defendants. If there was such evidence, the defendants have no cause to complain of this remark, for it was only a statement that if they had acquired no right by prescription they were liable for the injury caused to the plaintiffs' bridge by the flowage. No other justifications of the flowage were attempted ; and if the defendants had no prescriptive right to throw back the water, as their charter gave them no such right, the flowage complained of in this suit was wrongful as against the plaintiffs, who were injured by it ; and it is immaterial, so far as the defense to this action is concerned, when the defendants first began to flow the land where the bridge was situated. But the defendants suggest that, under the instructions of the court, they would have been liable if they had been the owners of the land on which the bridge was erected. Whether they would have been liable under those circumstances we need not inquire, for no such case is presented by the evidence. *Gerrish* v. *Newmarket Co.*, 30 N. H. 478. The defendants seem to have abandoned their last exception, and, we think, properly. The wrongful flowage was the proximate cause of the injury to the plaintiffs, which would not have occurred but for that ; and, therefore, although other causes, for which the plaintiffs are not in fault, may have contributed to the result, the defendants are liable. *Littleton* v. *Richardson*, 32 N. H. 63 ; *Winship* v. *Enfield*, 42 N. H. 215 ; *Cowles* v. *Snow*, 24 N. H. 383. There must be

*Judgment on the verdict.*