Grafton, }
March 5, 1918. }

## JOSEPH H. BARKER *v.* PUBLISHERS' PAPER COMPANY.

In trespass *q. c. f.*, damages may be awarded for the loss of the use of the property subsequent to the date of the writ, if such loss has been caused by acts prior thereto.

In trespass *q. c. f.*, the plaintiff can recover damages for injury to the freehold arising from the impairment or destruction of its aesthetic features, whereby its utility is impaired.

If the defendant's use of the property reasonably causes such injury, the plaintiff can recover either for the damage to the property or for the value of the use made by the defendant; but he cannot recover such damage plus the value of that use.

In trespass *q. c. f.*, damage or loss of valuable use to the plaintiff by the defendant's occupation of the *locus* is to be computed with reference to the plaintiff's entire estate, including both the *locus* and the adjoining premises.

Two actions of trespass *q. c. f.* between the same parties may be consolidated where the first action is to recover for the injury during a part of the defendant's occupancy and the second action is to recover for the occupancy of the same premises subsequent to the date of the first action, and the whole damage may be assessed at once.

An exception to an assessment of damages on the ground that there is no evidence to warrant a finding of more than nominal damages is unavailing, if no objection was made until after the case had been submitted.

TRESPASS, *q. c. f.*, being the same case reported *ante*, 160. After the former opinion was filed, the case was heard upon the assessment of damages. It appeared that the *locus*, consisting of about one acre, was a part of a farm owned by the plaintiff, that he expected to devote the whole to the uses of a summer school or camp for girls, and that the defendant's defacement of the scenery and occupation of the premises as a saw-mill site interfered with his summer business. The defendant occupied the *locus* for several years, but this suit was brought a few months after its entry. Among other things, the plaintiff claimed to recover here for "damages to the freehold arising out of the destruction of the natural beauty of the spot," as a "permanent injury."

A witness called by the defendant, and shown to be familiar with values in that vicinity, testified to the present value of the plaintiff's property. Subject to exception, his opinion of its value "if there had not been any mill up there at the foot of the lake" was excluded.

Damages were assessed as follows:

1. For permanent injury to the *locus*, considering its location and also in connection with the rest of the plaintiff's premises for the use he intended to make of them, and other uses for which it was adapted, $500.

2. For the rental value of the *locus* as used by the defendant to the date of the writ, $450.

3. For decrease in the value of the remainder of the plaintiff's. premises by the defendant's unlawful acts and continued use of the *locus*, $1000.

Total damages $1950.

The defendant excepted to the findings and assessment of damages, and filed a bill of exceptions, which was allowed by *Kivel*, J., at the September term, 1916, of the superior court.

*Branch & Branch (Mr. Frederick W. Branch* orally), for the plaintiff.

*Edgar W. Smith* (of Vermont), *Allen Hollis* and *Joseph W. Worthen (Mr. Hollis* orally), for the defendant.

PEASLEE, J. The defendant's exception to the assessment upon the ground that there was no evidence to warrant a finding of more than nominal damages comes too late. No objection on this ground appears to have been made until after the case was submitted and the findings made. Failure to make this objection before the case was submitted constituted a waiver of the right to make it. *Moynihan* v. *Brennan*, 77 N. H. 273, 274, and cases cited.

The plaintiff claimed to recover for "damages to the freehold"; that is, for permanent injury to the estate because of what the defendant did before the date of the writ; and offered evidence to sustain this contention. Subject to exception, the court excluded evidence offered by the defendant as to the probable value of the estate at a later date if the defendant had not trespassed upon the premises. This ruling was apparently based upon the theory that it was called for because the plaintiff was limited in his recovery to the damage caused before the date of the writ. But there is a plain distinction between loss caused by subsequent acts, and loss of valuable subsequent use caused by prior acts. 3 Sedg. Dam., *s.* 924. For the former there could not be a recovery in this suit, for the latter there could be. The plaintiff claimed such recover-

able damage. Evidence as to the subsequent value of the estate, both in its damaged condition and undamaged, bore directly upon the issue made by the plaintiff and should have been received. Because of its exclusion the findings must be set aside.

The measure of the plaintiff's damages has been fully argued, and as the question must arise upon the retrial of the case it has been considered. The plaintiff's claim is that he can recover the value to the defendant of the use of the property, and also the damage caused to the plaintiff by that use. By the term damage as here employed he evidently means the total lessening of the usefulness of his property for summer resort purposes by reason of the defendant's acts. Whether the wrong to the plaintiff is called damage, or loss or impairment of use, is not especially important, if the real character of the loss and the proper measure of recovery are kept in view.

In its final analysis, the property in any thing consists in the use. *Eaton* v. *Railroad*, 51 N. H. 504, 511; *Swain* v. *Company*, 76 N. H. 498. But as the value of property is ordinarily expressed in a lump sum, so a partial deprivation of the use of it is often expressed in like terms. Worked out in mathematical detail, the damage in such a case is the decrease in using value for the period it will continue, discounted (as to the future) and with interest (as to the past) to the time the assessment is made. When this has been done, the sum found represents the decrease in the value of the property as of the date of the verdict, that is, the decrease in the present worth of the perpetual use. In practical affairs this mathematical nicety is not commonly observed. But whether it is or not, its correctness in theory is of value to show that the loss of use is what recovery is based upon, and that calling it damage to property does not alter its character or increase the plaintiff's verdict.

The plaintiff can recover either what he terms the damage to the property or the value of the use made by the defendant. He cannot recover such damage plus the value of that use. The damage being caused by the use, the plaintiff has lost only one or the other. He himself could not have put the property to that use without suffering the damage. To enjoy his property aesthetically, he must forego its use for a saw-mill site. He could not use it for both purposes. But if he could recover full damage for aesthetic loss, plus the value of the acre for a saw-mill site, he would receive pay for two inconsistent uses of his property.

There might be a case where the detriment to the owner consisted

in part of injurious acts not incident to the use of the property made by the defendant. In such a case there might be a recovery for both, since the damage not incident to the defendant's use would not have been considered in fixing the value of that use. But in this case there seems to be no evidence that the acts done by the defendant exceeded those of one reasonably using the premises for a mill site.

An assessment computed on the basis of the use enjoyed by the defendant, is founded upon the fact that the use made belonged to the plaintiff. But the right to use this property for a saw-mill site and as scenery for a summer school at one and the same time did not belong to the plaintiff, because the property was incapable of such duplicated and incompatible uses.

In *Green Bay &c. Co.* v. *Company*, 112 Wis. 323 (quoted with approval in *Lancaster &c. Co.* v. *Jones*, 75 N. H. 172, 182) the illustration of the idle horse at pasture, appropriated and used by a wrong-doer, demonstrates that the owner could recover the value of the labor performed by the horse, or the value of its use. And that was thought by this court to be the extent of the plaintiff's right. But if the claim here advanced were correct, the plaintiff could have recovered twice that amount. The argument runs like this: The use of the horse was worth one dollar a day. But for the defendant's trespass the plaintiff might have had that use, as was his right. The defendant worked the horse unlawfully and got a dollar a day of value from it. Therefore the plaintiff is entitled to recover what he lost (called the damage) plus what the defendant gained (called the value of the use), or two dollars a day. This argument creates value where none existed before.

In trespass for cutting and carrying away shade trees, the owner is not limited to their value for lumber. *Beede* v. *Lamprey*, 64 N. H. 510; *Hovey* v. *Grant*, 52 N. H. 569, 581; *Wallace* v. *Goodall*, 18 N. H. 439, 456. He recovers what their aesthetic value was. But he does not recover in addition thereto what the defendant got out of the lumber. If the defendant left the trees lying upon the land, the plaintiff recovers the aesthetic value less the value he himself can reasonably get out of the lumber. If at a later date the defendant carries off the logs, the plaintiff also recovers their value for timber. But he cannot recover their value as logs once by refusing to deduct it from their total loss, as viewed from the aesthetic standpoint, and again by charging the defendant for their timber value.

All this goes to show that what is really recovered, and all that is recovered in any instance (in the absence of proof calling for the imposition of exemplary damages) is the value of the use, of which the plaintiff has been deprived. It is often called by this name when the value is estimated in terms of the use made by the defendant, and it is sometimes called damage to the plaintiff when estimated at the worth of the use to him. But in each instance it is the value of the use which measures the plaintiff's recoverable damages. He is entitled to its value for the most profitable purpose it could be put to, and he is not entitled to recover more than that.

The recoverable damage may consist merely in the deprivation of the use while the defendant is in possession, or it may be a larger sum because the defendant's use has injured the property for future use. It is the whole injury to or deprivation of the use that the plaintiff recovers for. He may be as effectually deprived of the use by injury to the property as by its continued occupation by the defendant, or the deprivation may consist in part of each.

The total amount of damage the plaintiff is entitled to recover is not affected by the fact that it is sought in one suit rather than in successive suits. The present action is brought to recover for the injury to the plaintiff by the first four and a half months of an occupancy by the defendant for a much longer period. But the damages in this suit are not to be assessed by merely computing the value of the aesthetic use of the plaintiff's property, alleged to have been destroyed by the defendant's acts done prior to the date of the writ. The land in its damaged condition was still his, and against the total loss of its aesthetic value should be offset its value in its non-aesthetic state for use as a saw-mill site. It is like the cutting of the shade trees, where the total aesthetic loss is reduced by the value of the timber left in the plaintiff's possession. In each case it is a question of how much value the plaintiff has been deprived of. He cannot refuse to make a reasonable use of the property as left. *Hutchinson* v. *Parker*, 64 N. H. 89; *Hutt* v. *Hickey*, 67 N. H. 411, 418 and cases cited. If A negligently breaks B's arm, B's damages are not assessed upon the basis that nothing will be done to remedy the injury; and if he refuses to take reasonable care to repair the hurt his recoverable damages are not increased. *Tuttle* v. *Farmington*, 58 N. H. 13.

It may be that when there are successive suits for continuing acts the assessment will vary in the aggregate from what it would be if the whole matter were included in one action. But this will re-

sult from error in finding the facts in one or more of the successive suits, and not because the rule of law by which the damages are to be assessed varies. It may be that the trier of the first suit will consider the future value of the saw-mill use a small sum, and thus reduce but little the award in that suit for the aesthetic loss; while the trier of the second suit may consider the saw-mill use of great value and award the plaintiff a large sum for it. It may be that this error could be prevented by obtaining special findings in the first case, showing how the value of the saw-mill use was there assessed, so as to conclude the parties on that question in the second suit.

But in this litigation there is now no occasion for such doubt or circuity. The trespass is now at an end. A second suit, to recover the damage for the occupancy from the bringing of the first suit to the end of the trespass is now pending. No reason appears why the two suits should not be consolidated, or tried as one, and the whole damage assessed at once.

In such trial the question will be: What was the value of the use the defendant unlawfully took from the plaintiff? *Lancaster &c. Co.* v. *Jones,* 75 N. H. 172; *Philbrook* v. *Company,* 75 N. H. 599. It may be that the value for a saw-mill site, as used by the defendant, is greater than as an adjunct to the plaintiff's summer business. If so, he can recover the former sum, but he cannot recover both.

It appears from the evidence and arguments that the plaintiff's claim is that the aesthetic value of his property for the use he had for it was wholly destroyed by what the defendant did in the early stages of its occupancy—that the defendant's acts amounted to a permanent taking of this element of value from his estate. If this is found to be the fact, one method of computing his total damage would be to treat the reduction in the value of his property by this taking as one item to be compensated for. But, as before pointed out, the damage caused by the taking does not include the value of what the defendant did not take. The aesthetic value not being the only value, and the other value consisting in a use incompatible with the plaintiff's summer business, the destruction of the aesthetic value merely reduces the worth of the property by the amount that value exceeds what may be called the practical value. If the loss of aesthetic value, taken alone, was one thousand dollars, and the saw-mill site value which remained was five hundred dollars, the plaintiff would recover in the first suit five hundred dollars for deprivation of the aesthetic use. And as the defendant thereafter took the use for a saw-mill site, the plaintiff would re-

cover five hundred dollars for that, in the second suit. When the cases are tried together, no such separation of the damages will be necessary.

It is possible to assess the damages by finding the total value of the use to the plaintiff, and, deducting therefrom the value of the use to the defendant, to call the remainder the damage to the plaintiff and the other fraction the worth to the defendant. But as these two sums must then be added together again to find the whole amount the plaintiff is entitled to recover from the defendant, the process serves no useful purpose, now that the whole matter can be tried at once. And any process of assessment or computation, whereby these elements are made to exceed in the aggregate the value of some use to which the property could have been put, is erroneous both in fact and in law.

It is argued that the defendant cannot by a continued wrongful occupancy of the plaintiff's property enrich itself, or acquire value without paying the plaintiff therefor; that when the first suit was brought the damage to the aesthetic use was complete and ought not to be reduced because further wrongs done by the defendant would entitle the plaintiff to recover further damages; that permitting such reduction of the aesthetic damage puts a premium upon the defendant's continued invasion of the plaintiff's rights and enables it to profit by its own wrong. But it does not so profit under this rule. If the land was worth five hundred dollars for a saw-mill site at the time the first suit was brought, it would make no difference in that suit whether the defendant or some other party thereafter used it for this purpose and paid its value. If it was worth five hundred dollars, the plaintiff could get five hundred dollars for it, and if it was not worth five hundred dollars the defendant is not to be charged that sum as its value. If it is true that the defendant was the only customer for a saw-mill site, that fact may show that it was not worth five hundred dollars. It does not show that the plaintiff could not have let it for what it was worth, nor entitle him to recover more than its worth from the defendant.

When the two actions are considered separately, and the recovery in the first suit is based upon loss of aesthetic value, the rule that the total aesthetic loss is to be reduced by the value of the practical use that remains is not to be ignored. And in the second suit it must be remembered that the saw-mill value for which recovery is there had is no less and no more than the same value, as estimated in the other suit.

In the first suit, the plaintiff's recovery is reduced from the total aesthetic loss because what is left to him is worth the sum deducted. The principle governing the deduction is not in any way affected by the fact that the future use is thereafter enjoyed wrongfully by the defendant or rightfully by some one else. It is the value of that use, not the fact of its enjoyment, that enters into this computation. Wrongs done after the date of the first writ are recovered for in the second suit only. And they are then recovered for because the rights infringed had value and belonged to the plaintiff when infringed upon. The defendant is not to be charged once for taking the saw-mill use from the plaintiff in the first suit and again for using it in the second suit.

When the trial takes place after the termination of the trespass, the fact of the defendant's continued occupancy may be important evidence upon the value of the use. *Lancaster &c. Co.* v. *Jones, supra.* It does not affect the way the law deals with that value when found.

It is evident that much of the divergence in views between the parties here arises from the confusion incident to the attempt to separate the damages so that the appropriate portion thereof shall be recovered in each suit. There is in such a situation a natural tendency to duplication. Knowing that the whole wrong has been done, it is difficult to view it as terminating arbitrarily at the date of the first writ. But it is necessary to do this if the cases are to be tried separately. With the trial of the cases as one, much of the difficulty disappears.

When the cases are tried together and one assessment of damages is made, all the surrounding facts and circumstances are to be treated as evidence upon the issue of the extent of the plaintiff's entire damage, or the value of the entire use the defendant made of his property. Was its worth for a saw-mill site greater than for any other use? If so, the plaintiff may recover the larger sum. Was the use of which the defendant's acts deprived the plaintiff more valuable than that made by the defendant? If so, the plaintiff again may recover the larger sum, since in any event he was entitled to put his property to the most profitable use it was capable of. *Horton* v. *Cooley,* 135 Mass. 589. But in neither event can he recover both the value of the use to him and its value to the defendant. To suppose that both uses could be enjoyed at once is to presume an impossible situation; and to assess damages on that basis would be paying the plaintiff for value that never existed.

"The plaintiff is entitled to be compensated according to the magnitude of his loss. The defendant ought only to be liable to compensate him according to the magnitude of his loss." *Foote* v. *Merrill*, 54 N. H. 490, 494.

The damage, or loss of valuable use, to the plaintiff by the defendant's occupation is to be computed with reference to his whole estate. It is not to be found by first considering what the acre would be worth if it could be used with the estate, and adding thereto the decrease in value of the estate if this acre were taken from it. By such a process the same item of damage might be recovered twice — once because the acre was taken from the estate and again because the estate was deprived of the acre. It may be possible to apportion the worth of property valuable only for a common use between the parts of it; but the process is an unsatisfactory one, and quite likely to result in an over-estimate on the whole. *Cocheco Co.* v. *Strafford*, 51 N. H. 455. Unless circumstances render such division necessary, the logical and proper method is to treat the estate as a whole in making up the assessment.

*Exceptions sustained.*

All concurred.