Hillsborough,
No. 4629.

Origene Descoteau *v.* Boston and Maine Railroad.

Argued March 5, 1958.

Decided April 24, 1958.

272

*Normand R. Pelletier,* and *Upton, Sanders & Upton (Mr. Robert W. Upton* orally), for the plaintiff.

*Sheehan, Phinney, Bass, Green & Bergevin* and *Richard A. Morse (Mr. Phinney* orally), for the defendant.

DUNCAN, J.   On the day of the accident the plaintiff was engaged as a patrolman in inspecting track out of Lowell, Massachusetts, on the Lawrence branch as far as Tewksbury.   He had traveled with his foreman by motor car to "Wamesit," where they arrived at about 10 A. M.   The car was set off the track and the foreman proceeded on foot to inspect another half mile of track. The plaintiff first cleaned a cross-over switch light and filled it with kerosene; then on instructions from his foreman he went to the section house to light a fire.   The day was clear and cold, with a temperature of twenty-six or seven degrees above zero and a northwest wind of about thirty-five or forty miles an hour.   The plaintiff testified that he unlocked the section house, removed his coat, placed some newspaper in the "pot-bellied" stove, lighted it, and put in some coarse pieces of chopped wood two to four inches in diameter, which he later had described as "wet wood."   He then picked up a partly filled five-gallon kerosene can which stood close by on the floor, and tilted it toward the fire.   Before more

than a few drops struck the stove, the can exploded, coming apart at the seams. The plaintiff was badly burned and the interior of the eight-by-ten-foot section house was set afire. The plaintiff ran from the house and eventually was taken to a Lowell hospital. The Tewksbury fire department was summoned at 10:23 A. M. and the fire was extinguished within an hour thereafter. Some of the paper, and the firewood only slightly charred, were found in the stove.

The plaintiff, who was 64 years old, had been in the employ of the defendant for forty-four years as trackman, assistant yard foreman, and lastly as section patrolman. He was unable to read or to write, beyond signing his name. While a rule of the railroad provided that "kerosene or gasoline must not be used to start a fire" there was evidence that throughout the plaintiff's lengthy employment, he and other employees of the defendant including the plaintiff's foreman, frequently used kerosene in starting fires in section house stoves, as well as in burning ties, and grass along the right of way. The plaintiff was unaware of the safety rule and denied that he had ever had a copy of the rule book.

Evidence was introduced by the plaintiff that it was impossible for kerosene to explode under the conditions which existed in the "Wamesit" section house on November 27, 1951, but that gasoline, and snow-melting oil, commonly called "skunk oil," both of which were used by section hands on occasion, could have produced such an explosion. There was no direct evidence as to what constituted the contents of the exploding kerosene can. The defendant's evidence tended to prove that kerosene could explode under the circumstances disclosed by the evidence. Gasoline was customarily stored in distinctive red cans, and "skunk oil" cans bore no resemblance to the cans used for kerosene.

The plaintiff claimed that the defendant was negligent in failing to provide, publish and enforce reasonable rules for the safety of its employees, in failing to warn the plaintiff of dangers of which it knew or should have known and of which he was justifiably ignorant, and in permitting gasoline or "skunk oil" to be kept in the section house in a can commonly used for kerosene. These issues were submitted to the jury. The defendant contended that there was no evidence upon which it could be found negligent, and that it conclusively appeared that the plaintiff's injuries were due solely to his own negligence. However, the issue of the plaintiff's due care was also submitted to the jury.

Under the provisions of the Federal Employers' Liability Act, contributory negligence of the plaintiff is not a bar to the action but goes only to the reduction of damages. 45 U. S. C. A., s. 53; *McAllister* v. *Railroad,* 93 N. H. 400, 403. Likewise an employee is not to be held to have assumed the risk of injury resulting in part from the negligence of the carrier. *Id., s.* 54. Consequently if there was evidence upon which it could be found that the plaintiff's injuries resulted wholly or in part from the defendant's negligence the motions for a nonsuit and a directed verdict were properly denied.

The issue of the defendant's negligence in the enforcement of its rule against using kerosene to start a fire, and in failing to warn the plaintiff of the dangers of doing so were properly submitted to the jury. The plaintiff denied that he was ever furnished a copy of the safety rules or informed of the rule against using kerosene to start fires. While the defendant introduced evidence calculated to establish that a rule book had been in the plaintiff's possession and that safety bulletins and rules had been discussed in his presence at safety meetings, the evidence did not compel belief that the rule in question was ever brought to his attention.

There was ample evidence of the common use of kerosene by employees for the purpose of starting fires over a period of many years. Promulgation of the rule forbidding such a practice was evidence of the reasonable necessity for the rule (*Topore* v. *Railroad,* 78 N. H. 536), and the evidence of habitual disregard of the rule warranted a finding of the defendant's knowledge of the practice and of its negligence in the performance of its duty to enforce the rule. *King* v. *Railroad,* 79 N. H. 95; *Musgrave* v. *Company,* 86 N. H. 375, 377; *McAllister* v. *Railroad,* 93 N. H. 400, 402. See also, *Deschene* v. *Company,* 75 N. H. 363; *Cummings* v. *Railroad,* 364 Mo. 868; 3 Labatt, Master and Servant, *ss.* 1119, 1138.

Similarly the issue of whether the defendant was negligent in permitting gasoline or skunk oil to be kept in the section house in a can commonly used for kerosene without warning the plaintiff presented an issue for the jury. As previously indicated there was no direct evidence of whether the can which exploded contained kerosene or some other substance. It appeared however that the can was the sort commonly used for kerosene, and that at the temperatures prevailing on the day of the accident and immediately prior thereto kerosene would not vaporize sufficiently to produce

an explosive mixture. Over the objection and exception of the defendant, the plaintiff's expert was permitted to testify that either gasoline or. skunk oil would have produced an explosion at the temperatures then prevailing.

The defendant contends that this evidence was erroneously received because there was no evidence that the can contained either of the last mentioned substances, and the witness' testimony that either might have caused the explosion rested only upon conjecture upon which a verdict could not properly be founded. See *Dade* v. *Railroad*, 92 N. H. 294; *Nadeau* v. *Stevens*, 79 N. H. 502. The evidence disclosed however that gasoline was used for various purposes by sectionmen and patrolmen, and in particular to operate motor-driven generators used in tamping the road bed, an operation which had been conducted in the "Wamesit" vicinity during the preceding fall. While the plaintiff's foreman denied that any gasoline would have been left in the section house or was customarily stored there, it did appear that the section houses were commonly used for overnight storage of tools and equipment by the tamping crews.

Snow-melting oil which was used in distinctive cans having a long spout with wick at the end was customarily stored at Lowell. The plaintiff testified that there was a snow-melting can stored overhead in the section house on the day of the accident. No substance other than kerosene, gasoline, and snow-melting oil, of a character likely to be stored in a kerosene can, was shown to be in use about the section house. Access to the house was by key only, and it was available for use only to the employees of the defendant.

Thus the plaintiff's evidence warranted a finding that the explosion could have been caused by either of two substances in common use by the defendant's employees. If either of these had been stored in the kerosene can without warning, negligence on the part of the defendant could reasonably be found. If the jury was satisfied by the testimony of the expert that kerosene was not the cause of the explosion, then a finding that the explosive substance was probably gasoline or skunk oil was not speculation or conjecture but merely a determination of the more probable of two possible causes of the explosion, for either of which the defendant could be found responsible. *Crocker* v. *Company*, 99 N. H. 330, 334; *Leavitt* v. *Bacon*, 89 N. H. 383, 392; *Demers* v. *Flack*, 88 N. H. 184, 186. See also, *Emery* v. *Company*, 89 N. H. 165, 167; *Saad* v. *Papageorge*, 82 N. H. 294. The plaintiff was not bound to

disprove the existence of all other possible causes. *Bresnahan* v. *Company*, 88 N. H. 273, 275; *Boucher* v. *Larochelle*, 74 N. H. 433. The testimony of the plaintiff's expert was properly received, and the issues pertaining to the defendant's negligence were properly for the jury.

The defendant further contends that its motions for a nonsuit and directed verdict were erroneously denied because it conclusively appeared that the plaintiff's conduct was negligent as a matter of law, in direct violation of a rule designed for his protection, and the sole cause of his injuries. We are not disposed to agree with this contention.

The contention that the motions should have been granted because the injuries resulted from violation of the defendant's safety rule is based upon principles which have ceased to be applicable. Reliance is placed upon *Van Derveer* v. *Railway*, 84 F. 2d 979 (2d Cir. 1936) and *Unadilla Valley Railway Co.* v. *Caldine*, 278 U. S. 139, cited in *McAllister* v. *Railroad*, 93 N. H. 400, 401. These cases were decided prior to the 1939 amendment of the Act, as a result of which carriers have been completely deprived of the defense of assumption of the risk. 45 U.S.C.A., s. 54. In *Tiller* v. *Atlantic &c. R. Co.*, 318 U. S. 54, the court held that the 1939 amendment "swept into discard" a "maze of law" which included the " 'primary duty rule' in which contributory negligence through violation of a company rule became assumption of risk. *Unadilla Valley Railway Co.* v. *Caldine, supra*; *Davis* v. *Kennedy*, 266 U. S. 147." *Id.*, 63, 64. "Thus the *Unadilla* case and *Davis* v. *Kennedy* case were expressly overruled." *Keith* v. *Wheeling & L. E. Ry. Co.*, 160 F. 2d 654, 657 (6th Cir. 1947), *cert. den.* 332 U. S. 763. See *Rogers* v. *Missouri Pac. R. Co.*, 352 U. S. 500, 508-509. In the light of the *Tiller* case we conclude that any violation of the defendant's rule on the part of the plaintiff was no bar to the pending action. The plaintiff's conduct was to be judged in the light of the circumstances under which he acted, including his experience (*Maltais* v. *Concord*, 86 N. H. 211, 216) and the evidence tending to show acquiescence by the defendant in habitual disregard of its safety rule. *Cummings* v. *Railroad*, 364 Mo. 868, *supra*; 3 LaBatt, Master & Servant, s. 1269.

Since there was evidence upon which it could be found that the plaintiff's injury resulted "in whole or in part" from the negligence of the defendant (45 U. S. C. A., s. 51), contributory negligence of the plaintiff could not properly be held as a matter

of law to be the sole cause of his injuries. It follows that the motions for nonsuit and directed verdict were properly denied. *Rogers* v. *Missouri Pac. R. Co., supra,* 507.

It also follows from what has been said that the issue of contributory negligence was for the jury, and that the defendant was not entitled to an instruction that the plaintiff was negligent as a matter of law. No exception was taken to the instructions by which the issue of the plaintiff's care was submitted to the jury. Certain of the defendant's first twenty-two requests for instructions were granted by the Court, and presupposed that contributory negligence was a jury issue. This was particularly true of its eleventh request which was given almost verbatim. It also filed two supplemental requests, and excepted to the denial of these requests. They were as follows:

"(1) As a matter of general understanding there is danger of explosion in pouring kerosene on a fire. If you find the plaintiff was injured as a result of so doing, he was not in the exercise of due care and his injuries were due to his own fault.

"(2) Although kerosene may be poured on an open fire without producing an explosion the fact remains that to do so is not a safe act. *Olena* v. *Company,* 82 N. H. 408, 414; *Glidden* v. *Brown,* 99 N. H. 323."

Only the first of these requests could be considered to call for an instruction that the plaintiff was negligent as a matter of law; but it would have required a finding that the accident was "due to [the plaintiff's] own fault," only if the jury should first find that the can contained kerosene, and that it was poured upon the fire. Since this would have required decision of the case upon selected portions of the evidence the request was properly denied. *Lynch* v. *Sprague,* 95 N. H. 485, 490; *O'Brien* v. *Company,* 95 N. H. 79, 82. Furthermore, it would have precluded a finding that the plaintiff's injuries in the circumstances described were due in part to his "own fault," and in part to that of the defendant. Hence it was properly denied for the reasons which required denial of the motions for a nonsuit and directed verdict. The second supplemental request by its implications, ignored the principle that encountering a known danger is not necessarily negligence. *Owen* v. *Hospital,* 82 N. H. 497, 499; *Piateck* v. *Swindell,* 84 N. H. 402, 403, 404. The common-law principle invoked in *Olena* v. *Company,* 82 N. H. 408, 414, that contributory negligence bars recovery, had no place in this trial, under the Federal Employers' Liability Act.

Contrary to the defendant's contention, the evidence in this case did not establish the plaintiff's negligence as a matter of law, so as to ·entitle the defendant to an instruction to that effect, or to one which would have required that any damages awarded to the plaintiff should "be diminished by the jury" (45 U. S. C. A., s. 53) on that account. *Cummings* v. *Railroad,* 364 Mo. 868, *supra; Douglas* v. *Daniels,* 62 Ohio App. 1, 19, aff'd 135 Ohio St. 641. See also, *Rivera* v. *Ancient City Oil Corp.,* 61 N. M. 473; *Bradley* v. *Fowler,* 210 S. C. 231, 237, 238; *Sinclair Refining Co.* v. *Piles,* 215 Ark. 469. The exceptions to denial of the supplemental requests are overruled.

The defendant excepted to the exclusion of evidence relating to the plaintiff's acceptance of retirement benefits under the Railroad Retirement Act. 45 U. S. C. A., s. 228, *et seq.* The plaintiff testified on direct examination that after he was released from the hospital he applied to the defendant's supervisor at Lowell for an "easier job," but was told that there was no work available which was lighter than his former employment. He further testified that the railroad had never offered him a job of any kind after the accident. Subsequently, in chambers, the defendant offered to prove the plaintiff's retirement at age sixty-six, "solely to correct what otherwise will be a false impression that the railroad refused to give him a job." Later in the trial, the defendant examined the plaintiff in chambers, and in the course of the examination offered a letter signed by the plaintiff under date of March 27, 1953, relinquishing "all rights to return to the service of the Boston & Maine Railroad." See 45 U.S.C.A., s. 228b (b). The letter was offered "as being germane to . . . any loss of wages after March 27, 1953." It was excluded subject to exception.

The defendant now concedes, as it did at the trial, that evidence of the plaintiff's retirement was not admissible in mitigation of the damages. *New York, N. H. &c. Ry. Co.,* v. *Leary,* 204 F. 2d 461 (1st Cir. 1953); *Sinovich* v. *Erie R. Co.,* 230 F. 2d 658 (3rd Cir. 1956). See *Clough* v. *Schwartz,* 94 N. H. 138, 141. It is evident that the retirement act does not preclude a retired employee from accepting further employment. See 45 U. S. C. A., s. 228b (d). No evidence was offered, or claim made, that employment would have been offered the plaintiff had he not accepted retirement benefits. It appeared that the attending physician to whom the defendant had referred the plaintiff had advised it in July 1952, that the plaintiff was able to "report for light duty only."

The plaintiff's right to recover damages for loss of wages, whether before or after retirement, depended upon establishment that he suffered such a loss by reason of disability due to the accident. If his injuries operated to terminate an earning capacity which he otherwise would have had, the consequent loss was unchanged by his receipt of unearned income under the retirement act. So far as appears, the evidence offered by the defendant as "germane to . . . any loss of wages after March 27, 1953," could be germane only if to be considered in mitigation of the damages. Since it was not admissible for that purpose, its exclusion was proper. *Sinovich* v. *Company, supra.*

The defendant had the benefit of instructions that in considering "how long the plaintiff might have continued at his work but for the injuries," the jury should consider "his age, the nature of the labor he was performing, and how long a man of his age might continue to do such work." Evidence of his acceptance of retirement benefits to which he was entitled by statute had no tendency to establish the length of time during which he might have engaged in gainful employment had he not been injured. The defendant's exceptions to the rulings excluding the evidence are overruled.

*Judgment on the verdict.*

All concurred.