Coos
No. 6768

RAYMOND A. & HAZEL L. MOULTON

v.

GROVETON PAPERS COMPANY *& a.*

RAYMOND D. STONE

v.

SAME

TOWN OF STARK

v.

SAME

July 30, 1974

*Sheehan, Phinney, Bass & Green* and *E. Paul Kelly, Hale & Dorr* and *Stephen H. Oleskey* (of Massachusetts) (*Mr. Oleskey* orally), for the plaintiffs.

*Wiggin, Nourie, Sundeen, Pingree & Bigg* and *W. Wright Danenbarger (Mr. Danenbarger* orally) for the defendants.

LAMPRON, J. The issues on this appeal are three questions of law, transferred in advance of retrial by *Mullavey*, J., pertaining to the measure of the damages to be assessed against the defendants if verdicts are returned for the plaintiffs. Their actions are for property damages caused on May 20, 1969, by the failure of the Nash Pond Dam, located in Odell

and owned by the defendants, which resulted in the discharge of a large amount of water downstream over plaintiffs' properties.

This court in *Moulton v. Groveton Papers Co.,* 112 N.H. 50, 289 A.2d 68 (1972), considered motions to dismiss certain grounds on which plaintiffs sought to recover their damages. As a result of the decision in that case, plaintiffs now seek recovery on two counts: the first based on common law negligence, and the second on a causal violation of RSA 482:42 pertaining to the duties of dam owners to maintain and repair their dams so that they "shall not become a dam in disrepair" as defined in section 1 III of RSA ch. 482. The first two questions relate to the measure and amount of damages recoverable by the town of Stark for two bridges, one carried away by the flood, the other rendered unsafe and later destroyed. The third question pertains to the damages which the other plaintiffs are entitled to recover for the injury to their real property caused by this flood.

We turn to the first question which reads as follows: "Assuming liability, does the collateral source rule govern so that the Town of Stark may recover from the Defendants the entire damage that the Town sustained from the flood . . . or is the Town limited to a recovery from the Defendants of any damages for which it has not or will not receive payment from the State of New Hampshire under Chapter 428 of the laws of 1969 or any other State statutes?"

The two bridges damaged by the failure of defendants' dam on May 20, 1969, and which must be replaced, were part of a Class V highway or town road (RSA 230:4 V) in Stark which was also damaged. RSA 230:1 (Supp. 1973). Under the provisions of RSA 231:8, the town is under the duty to maintain this road including its bridges. This obligation gives the town of Stark a "qualified property interest" in both the road and the bridges and a resulting right to recover damages for the cost of repairs made necessary by the negligence of a tort-feasor. *Concord v. Burleigh,* 67 N.H. 106, 108, 36 A. 606 (1891); *The Town of Troy v. Cheshire Railroad Company,* 23 N.H. 83, 95, 98 (1851); *Hooksett v. Company,* 44 N.H. 105, 109-10 (1862).

However, the legislature enacted Laws 1969, ch. 428, effec-

508

tive July 3, 1969, which reads in pertinent part as follows: "428:1 Repair of Bridges and Structures. The department of public works and highways is hereby authorized to repair, reconstruct, or replace, as determined by the commissioner of public works and highways to be appropriate, the following bridges or structures damaged by the flood of May 20, 1969: . . . [I]n the town of Stark, in the Emerson Road over the Nash Stream and over the Ammonoosuc River [the bridges in question in this case]. The town's share of the costs incurred pursuant to this section shall be . . . one-eighth in the case of class V highway bridges and structures . . . . 428:2 Repair of Highways. The department of public works and highways is hereby authorized to repair or replace state highways and town roads in the town of . . . Stark which were damaged by the flood of May 20, 1969. 428:3. Appropriations. There is hereby appropriated the sum of three hundred thousand dollars for the purposes of this act. Said appropriation shall be a charge against the highway fund . . . ."

The damaged highway itself has been repaired and the town has been reimbursed by the State for the full cost. The trial court found that "[t]he town has been using two temporary Bailey bridges supplied by the State pending erection of permanent replacements. Permanent replacement of the two bridges may involve the erection of new bridges larger than the old since State requirements for bridges have changed in recent years. The cost of the replacement of the two bridges is likely to exceed the depreciated value of the old bridges prior to the flood of May 20, 1969." *See* RSA 229:6; RSA 242:3, 19.

The town of Stark argues that the reconstruction of these bridges remains its obligation (RSA 231:8) and that neither Laws 1969, ch. 428 nor any other statute compels the State to provide it with financial aid for that purpose. It also maintains that, because of certain determinations to be made by the commissioner of public works under Laws 1969, 428:1 and by a unanimous board under RSA 242:4, Stark is not assured that it will receive funds from the State to help meet the cost of the new bridges. Be that as it may, we must assume for the purpose of answering transferred question No. 1 pertaining to the application of the collateral source rule

that payments will be made by the State to the town of Stark and that the State will not assert a right of subrogation for these payments.

Under the collateral source rule if a plaintiff is compensated in whole or in part for his damages by some source independent of the tort-feasor he is still permitted to make full recovery against him. D. Dobbs, Remedies § 8.10 (1973); Restatement (Second) of Torts § 920 A(2) (Tent. Draft No. 20, 1974). The rule that collateral benefits are not subtracted from the plaintiff's recovery has been applied to benefits paid under an insurance policy or by a relief association; employment benefits; gratuitous payments; social legislation benefits such as social security, welfare, pensions; and benefits received under certain retirement acts. *Bell v. Primeaux,* 104 N.H. 227, 183 A.2d 729 (1962); *Descoteau v. Boston & Maine R.R.,* 101 N.H. 271, 140 A.2d 579 (1958); *Clough v. Schwartz,* 94 N.H. 138, 48 A.2d 921 (1946); *Abbott v. Hayes,* 92 N.H. 126, 26 A.2d 842 (1942); *Rolfe v. Railroad,* 69 N.H. 476, 45 A. 251 (1898); *Colvin v. Goldenberg,* 101 R.I. 338, 273 A.2d 663 (1971).

Many articles in favor of, and against, the collateral source rule have appeared in law reviews, bar journals, and similar publications. *See* Bell, *Complete Elimination of the Collateral Source Rule – A Partial Answer to Criticisms of the Present Injury Reparations System,* 14 N.H.B.J. 20 (1972); Fleming, *The Collateral Source Rule and Loss Allocation in Tort Law,* 54 Calif. L. Rev. 1478 (1966); Maxwell, *The Collateral Source Rule in the American Law of Damages,* 46 Minn. L. Rev. 669 (1962); Schwartz, *The Collateral-Source Rule,* 41 B.U.L. Rev. 348 (1961); Tait, *Connecticut's Collateral Source Rule: Stepchild of the Law of Damages,* 1 Conn. L. Rev. 93 (1968); Note, 77 Harv. L. Rev. 741 (1964). The basic argument advanced for its application is that a tort-feasor should not be allowed to escape the consequences of his wrongful act merely because his victim has received a benefit from a collateral source which would constitute a windfall to the defendant wrongdoer. It also pointed out that in many instances the plaintiff has paid for these benefits in the form of insurance premiums or concessions in the wages he received because of such fringe benefits. If such considerations are not present and the pay-

ments are gratuitous, it is maintained that the maker of these payments did not intend to relieve the tort-feasor of any liability, but rather to aid the plaintiff by doing him a favor. D. Dobbs, Remedies § 8.10, at 584-85 (1973). It is also argued that the collateral source rule is designed to offset the inability of ordinary damages to adequately compensate an injured accident victim. Schwartz, *The Collateral-Source Rule*, 41 B.U.L. Rev. 348, 351 (1961).

The main argument against the application of the collateral source rule is that the main purpose of damages is to compensate the injured party. Hence the defendant should not be made to pay more than the amount needed to make the plaintiff whole. To do otherwise violates the compensatory nature of damages by placing the plaintiff in a better position financially than before the accident. Note, 77 Harv. L. Rev. 741, 753 (1964); Note, 63 Harv. L. Rev. 330, 331 (1949). An examination of the cases in which the rule has been applied will reveal that for the most part they involved personal injuries. Furthermore in some of those cases the collateral payor was subrogated, up to the amount paid, to plaintiff's claim against the defendant. Thus the plaintiff did not receive more than was necessary to make him whole nor was the defendant obliged to pay more than that amount. *See* 44 Am. Jur. 2d *Insurance* § 1849 (1969); 73 Am. Jur. 2d *Subrogation* §§ 138-40 (1974). This right of subrogation arises by contract, common law or equitable principles, and by statute. RSA 281:14; *McCullough v. Company*, 90 N.H. 409, 10 A.2d 245 (1939); 73 Am. Jur. 2d *Subrogation* §§ 1-8 (1974); *see Wentworth Hotel, Inc. v. F.A. Gray, Inc.*, 110 N.H. 458, 272 A.2d 583 (1970).

The legislature has had a long-established policy of granting aid to municipalities for the construction, repair and reconstruction of roads and bridges. Such aid fosters the general welfare by assuring good roads and bridges for the general public. RSA chs. 240, 241, 242. There is no provision in those statutes providing for reimbursement by the recipients. By Laws 1969, ch. 428, the legislature appropriated $300,000 out of highway funds to repair, reconstruct or replace highways or bridges in the towns of Colebrook and Stark damaged or destroyed by the flood of May 20,

1969 involved in this case. There is no provision in this statute for reimbursement by the towns of funds received under it. Nor did the legislature manifest by expressed language or by implication that it intended the State to be subrogated to the town's claim against any wrongdoer who may have caused or contributed to this flood. Neither do we find any indication that the legislature intended that a town was to recover from a wrongdoer not only what it paid from its own funds to replace bridges but also the seven-eighths of the cost which the State assumed to pay under Laws 1969, ch. 428. Stark would thus receive a substantial windfall much in excess of what it cost to make it whole for the damages it incurred. The town's right to recover against the defendants is based on the obligation placed on it by the legislature (RSA 231:8) to maintain the road and bridges which were damaged. The legislature by Laws 1969, ch. 428 has alleviated a major portion of the cost of that obligation. The town should not be allowed to claim damages from the defendants in excess of what it must pay to be placed in as good a position as it was in before the flood.

The answer to question No. 1 is that, assuming liability on the part of the defendants, the town of Stark will be "limited to a recovery from the Defendants of any damages for which it has not or will not receive payment from the State of New Hampshire under Chapter 428 of the laws of 1969 or any other statute."

Transferred question No. 2 reads as follows: "2. Assuming liability, may the Town of Stark recover from the Defendants (on the partial or full basis described in question one) for the cost of building two new replacement bridges and costs incident thereto, such as necessary dredging of the river beds, although the replacement bridges may (a) be larger than the old bridges, and (b) substantially exceed in cost the depreciated replacement value of the old bridges prior to May 20, 1969?"

Damages for the destruction of the two bridges in the town of Stark are to be in an amount which will fully and reasonably compensate for the loss sustained. D. Dobbs, Remedies § 5.1, at 312 (1973); 32 Am. Jur. 2d *Damages* § 131 (1967); *see Campbell v. Company,* 91 N.H. 390, 392, 20

A.2d 644, 646 (1941). By means of the preflood bridges the town of Stark was performing the duties imposed on it by RSA 231:8 to construct, reconstruct, and maintain class V highways of which these bridges were a part. RSA 230:1 (Supp. 1973). It is alleged that to meet these obligations and to comply with present State regulations and reasonable safety requirements the town will be obligated to build larger and wider replacement bridges. These requirements may also entail other costs such as dredging of the river beds. The town is entitled to be compensated according to the magnitude of its loss. *Barker v. Company*, 78 N.H. 571, 579, 103 A. 757, 761 (1918).

Recovery of the value of the old bridges, as advanced by the defendants, will fall far short of being fair and reasonable compensation for Stark's loss. The cost of the bridges which the town is legally required to construct to replace the two bridges with which it was performing the legal obligations imposed on it by the State is the measure of its loss. *The Town of Troy v. Cheshire Railroad Company*, 23 N.H. 83, 98-99, 104 (1851); *Clarksville v. United States*, 198 F.2d 238, 242-43 (4th Cir. 1952); *City of Fort Worth, Tex. v. United States*, 188 F.2d 217, 222 (5th Cir. 1951); *see* Restatement (Second) of Torts § 928, Comment *a* (Tent. Draft No. 19, 1973).

The answer to question No. 2 is that the town of Stark can recover its own costs of building the two new replacement bridges including any necessary incidental costs, although the replacement bridges are larger and substantially exceed in cost the depreciated replacement value of the old bridges.

The third and final question reads as follows: "Assuming liability, are the Plaintiffs Moulton and Stone entitled to the cost of restoration of their real property to the condition in which it existed prior to May 20, 1969, if such costs exceeds the difference between the fair market value of the property before the damage and after the damage?"

"Where a person is entitled to a judgment for harm to land . . . not amounting to a total destruction in value, the damages include compensation for (a) at the plaintiff's election i. the difference between the value of the land before the harm and the value after the harm or the cost of restoration which has been or may be reasonably incurred . . . ."

Restatement of Torts § 929 (a) i. (1939). "If, however the cost of replacing the land in its original condition is disproportionate to the diminution in the value of the land caused by the trespass, unless there is a reason personal to the owner for restoring the original condition, damages are measured only by the difference in value between the value of the land before and after the harm . . . [W]here a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building." *Id.* Comment on Clause (a) i *b*. This same position is taken in Restatement (Second) of Torts § 929 (Tent. Draft No. 19, 1973). We hold that the above statements correctly express the law of damages applicable to the real property of plaintiffs Moulton and Stone. *Fusegni v. Portsmouth Housing Auth.*, 114 N.H. 207, 317 A.2d 580 (1974); *Sainato v. Potter*, 222 Md. 263, 270, 159 A.2d 632, 636 (1960); D. Dobbs, Remedies § 5.1 (1973).

These plaintiffs allege that their properties have unique value to them and that they do not seek to sell, but rather restore them. If it can be found on the evidence that these properties can and will be restored to their prior conditions without costs disproportionate to the actual injury, the cost of such restoration is the measure of damages. If restoration is impracticable, the difference between the value of the properties before and after the injury is the measure of damages. This is the answer to question No. 3.

*Remanded.*

All concurred.