Hillsborough, ⎰
Feb. 7, 1922. ⎱

## HERBERT L. TUTTLE *v.* ALBERT E. DODGE & *a.*

Upon certain evidence as to the manner in which a servant customarily and with his master's authorization conducted the business of delivering goods with a commercial truck and of concurrently transporting himself thereby to and from his home for dinner, the question was properly submitted to the jury whether the servant was acting within the scope of his employment when, in so returning, he negligently drove the truck and injured a pedestrian.

On certain evidence as to the conduct of the driver of a truck and of a pedestrian injured thereby, the question as to which actor was at fault was properly submitted to the jury.

Testimony which amounts to merely a statement of the law is not evidence which varies or contradicts the facts to which the witness testifies.

If relevant evidence is likely to be used for an improper purpose, the remedy is not its exclusion but a request for appropriate instructions limiting its use.

Evidence that the plaintiff seeking to recover damages for a broken leg, sustained subsequent injuries while walking with crutches because of his crippled condition, and without fault on his part, is admissible as proving a direct consequence of the defendant's act.

An exception cannot be taken to an argument to the jury. Counsel should present his objection thereto in a form calling for a ruling by the trial court and the justice should allow exceptions only when they relate to a "ruling, direction or judgment" of the court.

If counsel *arguendo* make a prejudicial statement of fact, the error cannot be cured unless the trial justice finds that counsel so thoroughly and fairly withdrew the statement that it had no effect and that the trial was fair.

An erroneous statement of law by counsel does not vitiate a verdict unless endorsed by the court.

The failure of a party to call available witnesses may properly be considered by the jury in determining the credibility of a witness.

In a highway collision, the violation of statutory regulations as to speed and signals by the driver of a truck may be properly considered on the question of his negligence.

If a party desires an instruction of the court upon any particular point, or that the court should give certain views of the law to the jury, the proper course is for the party seasonably to move the court so to instruct; if the court decline, he may then take an exception.

The fact that all the elements necessary for a recovery are not stated to the jury when each was under consideration is not exceptionable, if in summing up on the issue of liability the various elements making up the plaintiff's case were stated *seriatim* and the jury were told that all must be proved.

CASE, for negligence, trial by jury and verdict for the plaintiff. The accident happened on December 9, 1918, on Elm street in Man-

chester and resulted from a collision between the plaintiff, who was on foot, and a light delivery truck owned by the defendants and operated by George S. Dodge, son of the senior partner of the defendant firm of Dodge & Laing. The defendants denied that the driver was acting as their employee at the time of the accident. Upon this question the evidence tended to prove the following facts. The driver was employed on a weekly salary. His duties were to deliver goods to the retail trade and different retail establishments in the city of Manchester, about fifty in number, scattered throughout the city, to be visited whenever business required it. For this purpose the defendants had furnished a Dodge commercial car. During the period between June, 1918, when the truck was purchased and the driver became the operator thereof, and the day of the accident, the driver had used the truck to go home to dinner, and practically as he wanted to, or saw fit to do, with the knowledge and consent of, and without objection from the defendants, or either of them. There were no stated hours of employment, except that he was supposed to be at the store at seven o'clock. The hour when he ceased work at noon and the time when he returned to work after the noon meal were not fixed, but were regulated and governed by his convenience and the amount of work to be done. The driver's work was to deliver goods, and so long as that was done, how he did it, when he did it, and the manner in which he did it were left to his own calculation and discretion, all of which was entirely satisfactory to his employers. He delivered orders on his way home to dinner, as convenience might demand during the entire period of the ownership of the truck, the purpose being to deliver the goods which the firm sold as expeditiously and as conveniently as he might be able to plan and devise, and in doing that the defendants left it to the driver's judgment and discretion how he should do it. On the day of the accident he left the store about 11.30, which was about his usual time, took the car, and went to his residence. After dinner he left home about 12.15, planning to get back to the store about one o'clock, to deliver goods which would not be ready before 1.30, but which he was to deliver when it was convenient or the proper time had come to do so, using this truck.

On his way back to the store he went to and stopped at the office of the Greer Piano Co., which took him four blocks away from the most direct route from his house to the store. While going to and from dinner he generally went the most direct route, but not invariably. He could choose whichever route suited his convenience and

taste when he went and came. His stop at the Greer piano store was for the purpose of inquiring about a player piano which he was contemplating purchasing for his wife. He had been conferring with the Greer Piano Co. with reference to buying a piano for two or three weeks, during which time he called at the piano store six times during working hours. The nature of his employment at the store was such that he was at liberty to do about as he pleased, so long as the work was accomplished. The negotiations concerning the piano were begun by Mr. Greer calling at the defendants' store, and while negotiations continued, the defendants' servant used the truck in question to call at the piano store at least once during business hours. The accident occurred after he left the piano store while he was on his way to the defendants' place of business and before he had reached the direct route thereto from his house. The defendants' motions for a nonsuit and for a directed verdict were denied, subject to exception.

The plaintiff's injuries included a broken leg. Subject to exception he was allowed to show that while walking with crutches he slipped and fell and received further injury, because of his crippled condition and without fault on his part.

Other facts and exceptions are stated in the opinion. Transferred from the January term, 1921, of the superior court by *Sawyer*, J.

*Malcolm E. Sturtevant* (of Massachusetts) and *Young & Cheney* (*Mr. Young* orally), for the plaintiff.

*Warren, Howe & Wilson* (*Mr. Howe* orally), for the defendants.

PEASLEE, J. I. The plaintiff seeks to charge the defendants for the negligence of the driver of the truck upon the ground that the driver's work for them and his own errands were by the course of business so interwoven that it was a question for the jury whether the former was not involved in the present instance. While the issue as to what acts are within the scope of a servant's employment is called a mixed question of law and fact (*Defoe* v. *Stratton, ante,* 109, and cases cited), the question whether there is any evidence from which the issue can be found one way or the other is one of law. Certain acts are clearly within the scope of a servant's employment, and certain other acts plainly are not. As to these, the issue is decided as matter of law. *Wheeler* v. *Contoocook Mills,* 77 N. H. 551. Still other acts may or may not be within that scope, as the facts surrounding the transaction may be found under appropriate instruc-

tions. But before the issue can be determined in the latter manner, there must be evidence to bring the situation into the debatable region. The mere proposition that the issue is a mixed one of law and fact does not call for its submission to the jury in the absence of sufficient evidence, or in cases where the facts are not in dispute and there are no inferences to be drawn. "When the facts have been ascertained and agreed upon by the parties, or are undisputed, and there is no dispute as to the inferences to be drawn from the facts, the question becomes one of law." *Harrison* v. *Company*, 135 Md. 170.

The test by which this point in the case is to be determined here is to inquire whether there was any evidence from which it could be found that the defendants' servant was doing any act which in any way was a part of their business, either directly or indirectly, at the time of the accident. If there was not such evidence the defendants are not liable, and their motions for a nonsuit and for a directed verdict were well grounded. But if the evidence warrants a finding that he was so engaged, the issue was properly submitted to the jury.

Whatever the relation of the parties was as to the use of the truck, it was not one created by an express contract, but one to be inferred from the driver's course of conduct and the defendants' acquiescence therein. From the driver's testimony, it could be found that he made no distinction between using the truck for his own errands and those of his employers. He did work for them on his trips to his dinner, and he did errands for himself when out on his usual business trips. It could be found that the implied contract was that the truck should be used for all these purposes indiscriminately, and that if there was occasion to make delivery or take orders in connection with the dinner trip it was the driver's duty to perform such service in connection with that trip.

While he testified that he never transacted any business for the defendants upon the return trip from his dinner, it could be found that this merely happened to be so and that his duty to do the business as convenience required might at any time call for such service. It could be found that if he had been called upon by the defendants for any such service during his so-called free time, it would have been his duty under the contract established by usage to perform the demanded service. The work to be thus done with the truck would be of a mixed character, and the arrangement for the mutual benefit of the parties concerned. It would enable the defendants to make

use of the driver's trips for his dinner, and the driver to make those trips more expeditiously and conveniently.

In determining in the first instance how the work should be done, what routes should be taken and what deviations made, the driver appears to have had complete authority. These matters were left entirely for him to arrange. The case is not one where a servant had a defined route to go over, but where the choice of time, route, deviation for incidental errands of his own, including trips for his dinner, were entirely in his hands. In effect, his employers said to him: Here is this work to be done, and you will also have to go to your dinner and do your personal errands. Take the truck and use it for all these purposes and to the best advantage for everybody.

While the driver's mere act of going to his dinner, or on the errand about the piano, would be solely his own business, yet facilitating the doing of either, so that by a combination of effort and resources the business of both parties could be more readily transacted, might well make the transportation of the driver in the automobile an act which was being done, in part at least, for the benefit of the master. *Depue* v. *Company*, 92 N. J. Law 550; *Carrier* v. *Donovan*, 88 Conn. 37.

The case has been argued by the defendants upon the theory that the contract between them and the driver must be found to be one granting to him, as an independent party, the right to use the truck. As before stated, the contract rests in the inferences to be drawn from the conduct of the parties. According to the testimony, there was no express agreement about the driver's having any time off in the middle of the day that was his own, or about the way in which the truck should be used; and it could be found that by tacit understanding and for their mutual benefit the business of the defendants and that of their driver was conducted as though it were all one enterprise. Strength is added to the probability of this view by the fact that this was a family affair. The driver was the son of the senior partner in the defendant firm.

Cases like *Danforth* v. *Fisher*, 75 N. H. 111 and *Wilkinson* v. *Company*, 79 N. H. 335, are not in point here. Those cases involve questions of departure from the expected line of conduct and the doing of unauthorized acts. Here the acts were fully authorized, or could be found to be so, and the only question is whether there is any evidence that doing them was in any way a part of the defendants' business.

Upon all the evidence it could be found that the driver's use of the car was much more than merely a permissive one. The con-

clusion that the defendants wished the whole affair to be conducted as it was, that in effect it was a part of their business program that the car should be used in this way to facilitate the interests of every one concerned, is well within the probabilities of the case. *Ferris* v. *McArdle*, 92 N. J. Law 580. It could be found that it was the driver's duty to take the car for this purpose, just as it would have been had there been a practice for him to use it to convey another employee who was bound upon similar errands. The fact that in this case the driver and the passenger were the same person does not determine the question of the defendants' responsibility. *Depue* v. *Company*, 92 N. J. Law 550; *Cox's Case*, 225 Mass. 220.

A finding that the driver's transportation of himself to his dinner and upon incidental errands was in pursuance of his contract of service was warranted, since the evidence tended to show "that it was one of the incidents of his employment, that it was an accessory, collateral or subsidiary part of his contract of employment, something added to the principal part of that contract as a minor, but none the less a real feature or detail of the contract. Whatever has been uniformly done in the execution of such a contract by both of the parties to it well may be regarded as having been adopted by them as one of its terms. Especially is this so where none of the provisions of the contract has been shown by either party, but everything is left to be inferred from their conduct." *Donovan's Case*, 217 Mass. 76, 78.

"Transportation to and from his work was incidental to his employment, hence the employment continued during the transportation in the same way as during the work." *Swanson* v. *Latham*, 92 Conn. 87; *Harrison* v. *Company*, 135 Md. 170; *Fisher* v. *Company*, (N. J.) 114 Atl. Rep. 150; *Littler* v. *Company*, 223 N. Y. 369.

In short, it could be found that the whole course adopted in the use of the truck was in pursuance of the contract to be implied from the conduct of the parties, was designed to promote the defendants' business, and did promote it in some degree. If the jury so found, the defendants would be liable for the driver's conduct at the time of the accident.

It is true that on the face of the driver's testimony a different state of facts, and one freeing the defendants from responsibility, might appear or be found. But the driver was shown to be an interested witness. He was the son of one of the defendants, and it was for the jury to determine whether his statements favorable to them were to be accepted as true or not. *Jensen* v. *Fischer*, 132 Minn. 475. Moreover, the driver's assertions that his trip was something

which in no way concerned the defendants or their business involved his conclusion as to the law applicable to the case. Because he went to get his own dinner, and because the piano errand was his own affair, he concluded that he could not be considered as acting as the defendants' employee. His testimony to that effect was "merely a denial of the law. It is not evidence which varies or contradicts the facts to which he also testifies." *Tilton* v. *Daniels*, 79 N. H. 368, 370. The issue whether the driver was acting within the scope of his employment at the time of the accident was properly submitted to the jury.

II. The position that there is no evidence that the accident was caused by the driver's fault, while the plaintiff was free from fault, is sought to be supported upon the theory that, in the attempts of each to avoid the other, the plaintiff was in each instance the first and careless actor and that the driver merely tried to avoid the effects of the plaintiff's successive careless acts. But there is also evidence that the situation was just the reverse of that. It could be found that the plaintiff was taking a safe course, which was, or should have been, manifest to the driver, that the driver carelessly turned his course, thereby endangering the plaintiff, that the plaintiff sought to avoid the collision by changing his course, that the driver again turned, and so on in like sequence until the accident occurred. Which version of the transactions was the true one, and the question of fault upon the part of either actor, were plainly matters to be submitted to the jury. There was no error in the denial of the motions for a nonsuit and for a directed verdict. *Chatel* v. *Schonland*, 75 N. H. 543.

III. Subject to exception, the plaintiff was permitted to show that there were outstanding against him large bills for treatment at a local hospital. This was objected to upon the ground that it would create in the minds of the jury an unfavorable bias, because the hospital was interested in the case to the extent of their bills. It was incumbent upon the plaintiff to show the amount of his expenses, if he expected to recover them, and no reason is apparent why this was not a proper method of doing so. If the defendants thought the evidence was likely to be used for an improper purpose, they should have asked to have its use limited by appropriate instructions. *Cobb* v. *Follansbee*, 79 N. H. 205.

The evidence concerning the subsequent injury to the plaintiff was properly received. It could be found that the later injury resulted from the defendants' wrong and that the plaintiff was without fault.

Under such circumstances the plaintiff is entitled to recover there-for. *Whittemore* v. *Railroad*, 77 N. H. 61, 63, and cases cited; *Guevin* v. *Railway*, 78 N. H. 289, 299. The question is not whether the damage was foreseen or foreseeable, but whether it in fact resulted as a direct consequence of the defendants' act.

IV. In the closing argument in behalf of the plaintiff, counsel said: "This man could have done what I fear too many times the automobile driver forgets and neglects to do — He could have stopped his car, and there would have been no collision and no accident." Exception was taken, and later the statement was withdrawn and apologized for. No instruction concerning it was given to the jury and no finding was made as to its effect upon the verdict or as to the fairness of the trial. The statement was, in effect, that automobile drivers are habitually negligent, and the inference to be drawn was that a verdict for the plaintiff ought to be found for the good of the general public (*Heald* v. *Railroad*, 68 N. H. 49), or that the driver could be found to have been negligent because such is the habit of automobile drivers. It is manifest that this was not a proper line of argument. It related to a vital point in the case and carried a substantial assertion of a highly prejudicial fact.

The claim that the language used did not amount to an assertion of the habitual negligence of automobile drivers as a fact — that "the statement was argumentative" — fails to give to the expressions used their ordinary significance. The jury would naturally understand that the idea counsel meant to convey to their minds was that according to his knowledge and observation automobile drivers are habitually negligent in the matter of caring for the safety of pedestrians. No reason is apparent for saying what was said unless there was a purpose to convey that idea. *Heald* v. *Railroad, supra.*

The error is one which might have been finally disposed of by the justice presiding at the trial. It is within his province when such a situation arises to instruct the jury to disregard the objectionable statement. While the burden has been held to be upon the offending party to procure such instruction (*Story* v. *Railroad*, 70 N. H. 364, 376; *Palmer* v. *Dimick*, 77 N. H. 565), it is within the province of the court to give it without request. Ordinarily, the presiding justice can instruct the jury with sufficient efficacy to assure himself that the error has probably been eradicated. In that event he can and should find that the trial was a fair one. The question at issue is, like all other matters of fact in civil cases, to be decided upon the balance of probabilities.

Our procedure is based upon the proposition that it should be such as justice and convenience require. One of the requisites for a full application of this principle is that errors should be corrected at the earliest practicable time, and in a manner to prevent as far as possible the waste and delay of mistrials. While in most respects the theory above indicated is followed in our practice to the fullest extent, in the matter of dealing with the argument of counsel to the jury we are far behind the reasonable and expeditious practice adopted in other jurisdictions. The question is one that can be dealt with most understandingly by the judge who presides at the trial, and that is the general practice elsewhere. The legitimacy, or otherwise, of the argument is ruled upon at once when objection is made and if the ruling is against the argument the offender is ordered to withdraw it and apologize, and a terse instruction to disregard it is given to the jury. This is followed later by a finding that the trial was fair, or, failing of that, by an order setting aside the verdict. While this line of procedure would not dispose of all questions that might arise, it has proved highly efficacious where it has been adopted. See *Wright* v. *Woodward*, 79 N. H. 474, 478, and cases cited; *Moran* v. *Fox*, 79 N. H. 523.

The long established erroneous practice here of claiming an exception without first objecting and obtaining a ruling from the presiding justice (*State* v. *Ketchen, ante,* 112) is undoubtedly responsible for the present situation. No good reason appears for continuing such practice. While so-called exceptions so irregularly taken have up to this time been considered because of the reliance of the bar upon the existing methods, the evil has increased to such an extent that it plainly calls for an abandonment of the practice at trials and in this court of treating a so-called exception to argument which is not based upon a ruling by the trial court, as raising a question of law. The "best inventible procedure" demands a reform in this respect upon the part of the bar, the trial court and this court. Counsel should present his objection in a form calling for a ruling by the court, the presiding justice should allow exceptions only when they relate to a "ruling, direction or judgment" of the court (*State* v. *Ketchen, supra*), and this court should consider such exceptions only as have been regularly taken.

This case and another decided at this session well illustrate the defects of the present practice. In *Duplessis* v. *Guyon, post,* 317, counsel stated and reiterated inadmissible and prejudicial facts. He insisted upon them "exception or no exception." Failing to take action to

then and there correct the error, the presiding justice should have set the verdict aside, putting upon the offending party the burden of excepting to such order and transferring the case to this court, if he thought any question of law was involved and had been decided erroneously. The present case belongs in a different class. The objectionable statement was here fairly and frankly withdrawn and fully apologized for. It would seem that the presiding justice could have so instructed the jury upon the subject as to warrant and demand a finding that the trial was fair. The least that should have been done was to give the instruction and consider and pass upon the question of the fairness of the trial.

Is the error now beyond remedy? Of course it is now too late to instruct the jury on the subject; but while the rule as generally applied has stated this as a part of the procedure necessary to be adopted to correct the error, and while it ought to be followed, its non-observance is not necessarily a bar to the remedial process. The essential thing is that the error was cured. As before pointed out, this is a question of fact to be passed upon by the presiding justice. The fact that instructions were given would be important evidence upon that issue, but the absence of such fact would not prevent a finding that the error was cured and the trial fair. If, in the present case, it should appear to the presiding justice that counsel so thoroughly and fairly withdrew the statement as to make it more probable than otherwise that the statement had no effect and that the trial was fair, a finding by him to that effect would be required as matter of law.

As this question has not been passed upon by the presiding justice, and as his finding may dispose of the error, the remaining exceptions have been considered.

The evidence as to the plaintiff's conduct was conflicting. In arguing that his version of his conduct should be believed, counsel said, subject to exception, that because men want to live and enjoy their usual health therefore it was a fair assumption that the plaintiff acted with reasonable prudence. The defendants now argue that a statement of a prejudicial fact was here involved. While the existence of the instinct of self preservation is a matter of fact, it is one of common knowledge. It is known the same as people know that water is wet and stones are hard. "Many common facts and prevalent conditions, amounting to general rules, within the ordinary experience or observation of jurors, or capable of being ascertained by reasoning, may be adopted by them as grounds of decision in cases not shown to be exceptions to such rules." *Huntress* v. *Railroad,* 66 N. H. 185,

188. This feature of the decision in the *Huntress* case has never been questioned. An argument based upon such a proposition is not to be treated like the assertion of a fact as to which proof would be required before it could be used in arriving at a verdict. *State v. Currier,* 79 N. H. 171. The vice in the argument here objected to is not that it informed the jury as to facts, in the ordinary sense, but that it sought to draw an unwarranted inference from a fact already so known to the jurors that they could make use of it in their deliberations, so far as its use would be proper at all. If the inference sought to be drawn was an improper one (*Wright* v. *Railroad,* 74 N. H. 128), it falls within the usual rule that an erroneous statement of law by counsel does not vitiate a verdict unless endorsed by the court. There is no claim that this was done in the present case. The defendants' remedy was to ask for an instruction correcting the error. *Voullgaris* v. *Gianaris,* 79 N. H. 408, 409, and cases cited.

The inference sought to be drawn is broadly distinguishable from those involved in *Caverhill* v. *Railroad,* 77 N. H. 330; *Lemay* v. *Demers,* 77 N. H. 563; *McDonnell* v. *Merrill,* 79 N. H. 379 and *Duplessis* v. *Guyon, supra.* In each of those cases there was an appeal for a verdict based upon the financial standing of one of the parties. The fault was not merely in the logic. There was no attempt to prove a fact by an unwarranted inference, but rather an appeal to disregard the evidence and find a verdict upon sympathetic grounds. In the present instance there was no appeal to prejudice or sympathy. So far as those elements are concerned, the argument was colorless. It was merely a claim that a certain material inference could be drawn from a fact of common knowledge. *State* v. *Currier, supra.*

V. The defendants' requests for instructions to the jury, so far as they were not given in substance, are largely restatements of the positions taken upon the questions heretofore considered. The requests to charge that if the driver was upon an errand "exclusively his own" the defendants are not liable, are faulty in that they omit all reference to the question whether this exclusive errand was being done in connection with the defendants' work, or in a way they designed it should be done to promote their interests. So far as they correctly state the law, they are, like the charge, mere general statements that the driver must have been acting in the course of his employment. The claim that the charge gave the jury to understand that the plaintiff might recover if the driver was careless, even though such lack of care was not a part of the cause of the accident, or even if the plaintiff was also negligent, is without foundation in

fact. The jury were otherwise instructed. The fact that all the elements necessary for a recovery were not stated when each was under consideration is not ground for complaint. In summing up on the issue of liability the various elements going to make up the plaintiff's case were stated *seriatim*, and the jury were told that all must be proved.

Exceptions to the charge upon the ground that it wrongly permitted the jury to consider the facts as to the driver having permission to use the car, and that he did work for the defendants on other dinner trips are disposed of under the discussion of the first question in the case.

The defendants did not testify, and excepted to an instruction that the jury might consider that fact in determining the scope of the driver's employment. One question for the jury to pass upon was whether they would believe the driver's statements of his relations with the defendants. Their failure to testify was the ordinary failure to call available witnesses (*Lee* v. *Hustis*, 79 N. H. 434), accentuated by the fact of their interest. Such failure could properly be considered when the jury took up the question of the extent to which they would believe the driver.

They also excepted to instructions that the driver's violation of statutory regulations as to speed and signals might be considered on the question of his negligence. The ground of the objection is that the plaintiff saw the truck in ample season to escape, so that such violations had no causal connection with the accident. But the jury might conclude that after the plaintiff saw the truck, neither actor was negligent and that if the driver had been traveling at a proper speed, or had given seasonable warning of his approach, the accident would have been avoided.

Upon the issue of the defendants' responsibility for the driver's acts the jury were instructed that they must find that he was acting in the course of his employment or within the scope of his employment at the time of the accident. They were told that on the evidence in the case the issue could not be decided by the court, but was one of fact to be found by them. Certain evidentiary facts bearing upon the issue were referred to, but no further definition or limitation of the meaning of the general terms, course or scope of employment, was given. The defendant did not request any instruction upon the subject, either before or after the charge, but excepted "to the neglect of the court to define the term scope of employment."

"All requests for instructions must be handed to the presiding

justice before the arguments." Superior Court Rule 52, 78 N. H. 697. This rule supplements the proposition long ago laid down that "If a party desire an instruction of the court upon any particular point, or that the court should give certain views of the law to the jury, and the judge omit so to instruct the jury, the proper course is, for the party to move the court to instruct; and if the court decline, he may then make the exception." *Moore* v. *Ross*, 11 N. H. 547, 557; *Wright* v. *Boynton*, 37 N. H. 9; *Maynard* v. *Fellows*, 43 N. H. 255; *Hooksett* v. *Company*, 44 N. H. 105; *Johnson* v. *Gallivan*, 52 N. H. 143; *First National Bank* v. *Ferguson*, 58 N. H. 403; *Nadeau* v. *Sawyer*, 73 N. H. 70. In the present instance there was no request for instruction either presented before the argument as required by the rule, or stated after the charge was given, as seems to have been the permissible practice before the rule was adopted. So far as the record shows, the defendant elected to stand upon the proposition that the charge as given was erroneous in law because of what it did not contain. If the facts were that the presiding justice understood the statement of the exception was intended as a request to give further instructions, and if he considered such implied request notwithstanding it was not made at the time required by the rule, the question argued by counsel would be properly raised. But no such situation is disclosed by the record, and until it is made to appear by an amendment of the case the question is not before this court.

As the case now stands, the verdict must be set aside because of the improper statement of fact made by counsel in argument. But as this error may hereafter be found to have been cured by the withdrawal and apology made by counsel, the order is

*New trial nisi.*

All concurred.