Hillsborough, }
Dec. 7, 1937. }

IVES ATHERTON & a, *Ex'rs*

*v.*

ALICE T. ROWE.

*Robert B. Hamblett, Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for the plaintiffs.

*Devine & Tobin* (*Mr. Devine* orally), for the defendant.

BRANCH, J. The order of the trial court, which purports to transfer without finding or ruling the question whether the verdict is adequate, was made as of the September, 1935, term of the Superior

Court apparently before the case of *Wisutskie* v. *Malouin*, 88 N. H. 242, was decided. The appropriate procedure with reference to motions of this kind was indicated in *Cyr* v. *Railroad*, 88 N. H. 278, 282, as follows: "The motions of the defendant to have the verdicts set aside as excessive present an issue of fact for the court below (*Wisutskie* v. *Malouin, ante*, 242), which that court has not yet passed upon. Although we might now consider whether the evidence is such as to compel a finding one way or the other, we are of the opinion that the better procedure is for the court below to pass upon the issues presented by these motions before transferring them to us. Ordinarily this is a court of review on action taken, and no reason for a departure from the usual practice appears in this case."

In the present case, however, a decision upon the questions of law properly transferred has necessitated an examination of the evidence upon the question of damages and there appears to be no inflexible rule of law or procedure to prevent an expression of our opinion in regard to the adequacy of the verdict so far as that question might be presented to us for decision upon a proper record.

In order to facilitate an early disposition of the case we may, therefore, say that we find in the record ample evidence to sustain the defendant's theory that "Dr. Atherton suffered but slight injuries as a result of the accident for which this suit was brought; that her death was not caused by the accident but was due to her age and to systemic conditions consistent with her age, such as hardening of the arteries resulting in Angina Pectoris, which caused her death." The verdict of the jury being thus in accord with a substantial portion of the evidence, cannot be disturbed upon the ground of inadequacy. *Morrell* v. *Gobeil*, 85 N. H. 150.

The most important question of fact presented at the trial was whether the death of Mrs. Atherton ten months after the accident at the age of 73 years and eight months resulted from the accident or from the degenerative processes incident to advancing years. Upon this point the court charged the jury as follows: "The first question which is most important for you to determine, is whether the death of Mrs. Atherton was directly caused by the injuries she sustained as a result of this accident." To this instruction the plaintiff excepted as follows: "The plaintiff excepts to the instruction of the Court that unless Dr. Atherton's death was due directly to the accident, damages may not be recovered therefor, on the ground the plaintiff is entitled to recover damages if death was either directly or indirectly in consequence of the accident."

The word "direct" has been so frequently used by this court to describe the legal consequences of an act that the use of this term by the trial court cannot, in itself, be regarded as error. *Tuttle* v. *Dodge*, 80 N. H. 304, 311; *Bowley* v. *Duca*, 80 N. H. 548, 552; *Derosier* v. *Company*, 81 N. H. 451, 463; *Tullgren* v. *Company*, 82 N. H. 268, 276; *Brackett* v. *Corporation*, 87 N. H. 173, 175; *Demers* v. *Flack*, 88 N. H. 184. In these decisions the word has been most frequently used to emphasize the point that the legal consequences of an act are not limited to those effects which were foreseen or foreseeable. "The question is not whether the damage was foreseen or foreseeable, but whether it in fact resulted as a direct consequence of the defendants' act." *Tuttle* v. *Dodge, supra.* The contrast thus indicated between the foreseeable consequences of an act and its legal consequences does not, however, limit the significance of the adjective "direct." The word is frequently used in the cases as a synonym for "proximate." There appears to be no inherent impropriety in the use of the term "direct cause" to indicate causation where there has been no intervening force (see Beale, Proximate Consequences of an Act, 33 H. L. R. 633, 643; McLaughlin, Proximate Cause, 39 H. L. R. 149, 160-165) and hence in many cases as synonymous with legal cause.

The plaintiffs contend, however, that if the language of the charge was not in itself erroneous "there was danger that it might mislead jurors unfamiliar with legal phraseology" and that for this reason a new trial should be ordered as in *West* v. *Railroad,* 81 N. H. 522, 532. Just what unwarranted significance the jury may have attached to the word "direct," does not appear. It is argued, however, that the above quoted instructions "prevented consideration by the jury of at least two possible bases of liability for death indirectly caused by the defendant's negligence. Upon the evidence the defendant's liability might properly be based either upon a finding that the defendant's negligence caused Dr. Atherton's death by setting in motion a series of 'dependent intervening forces,' an unbroken chain of events, or upon a finding that the defendant's negligence caused injuries which in combination with other factors resulted in death." More specifically the plaintiff argues as follows: "Age and its accompanying changes may have concurred with the accidental injuries to cause her death. From the evidence the jury might properly have found that the accident hastened her death and that, but for the accident, death would not have occurred when it did; that indirectly and in conjunction with other forces, the defendant's negligence caused Dr. Atherton's death. Yet consistently

with the instructions the jury could not find the defendant liable if it found these to be the facts." We do not think that this criticism of the charge is well founded. If the above quoted language, standing by itself, might conceivably lead to this conclusion, other portions of the charge were calculated to remove the possibility of misunderstanding and we do not think it can be found that any erroneous conception of the law was conveyed to the jury by the charge as a whole.

The court instructed the jury that "if Mrs. Atherton, by reason of age or other condition was more susceptible to injury than the average person, this would not relieve the defendant from the consequences of the injuries to Mrs. Atherton, whatever these may have been . . . In considering the question of damages, you will take into consideration Mrs. Atherton's age; the fact that she had a kidney and bladder ailment, which had been present, active or dormant, for some years and that she had recurrent attacks from time to time. You will consider whether or not the attack in late December arose from this collision, or would have occurred in any event."

It, therefore, appears that the jury was specifically instructed to consider the possibility of multiple causation of Mrs. Atherton's death and was told in unmistakable terms that the previous existence of unfavorable conditions would not relieve the defendant from the consequences of her acts. We, therefore, conclude that the charge cannot be successfully attacked either from the standpoint of abstract legal theory or from that of practical effect upon the jury, and plaintiffs' exception thereto must accordingly be overruled.

During the direct examination of a physician called as an expert witness by the defendant, defendant's counsel asked a hypothetical question, as follows: "Q. Assuming, Doctor, that a lady had an attack of pyelitis and cystitis in 1927, and at that time gave a history of previous attacks; in 1928, 1929, 1930, showed from time to time in urine, traces of pyelitis and cystitis, in the urine, in 1931 was operated on for the removal of a growth in the rectum, and at that time was treated for pyelitis and cystitis, would you say that during that period, from 1927 to 1931, following the urine showing some symptoms, that that would be about the right time for a recurrence, or would it recur." Thereafter the following proceedings took place: "*Mr. Upton:* Objected to as leading, and secondly, the hypotheses are not according to the evidence, that she was treated for pyelitis and cystitis in 1931. *Mr. Devine:* One of the witnesses, whatever the

superintendent's name is, read that out here from the records. *The Court:* If you think that evidence is in, go ahead. *Mr. Upton:* Subject to my exception. *The Court:* Exception noted. . . . A. You could expect a recurrence at any time, in a patient suffering from a pyelitis or cystitis over a period of years."

The plaintiffs' exception to the foregoing testimony is unavailing. The admission or exclusion of leading questions is a matter within the discretion of the trial court and it has long been understood in this State that a verdict will not be set aside because the court permitted the party calling a witness to put leading interrogatories. *Hunt* v. *Haven*, 56 N. H. 87, 104; *Moody* v. *Perley*, 78 N. H. 17, 22.

In regard to the second ground of objection, namely, that "the hypotheses are not according to the evidence, that she was treated for pyelitis and cystitis in 1931," it is sufficient to say that this hypothesis was fully sustained by the testimony of the doctor who treated Mrs. Atherton in 1931.

In accordance with the foregoing conclusions it is plain that there should be

*Judgment on the verdict.*

All concurred.