PHILIP R. PRIDHAM, ADMINISTRATOR,
ESTATE OF HERBERT PRIDHAM

v.

CASH & CARRY BUILDING CENTER, INC.

May 29, 1976

*Shaines, Madrigan & McEachern* and *Gregory D. Robbins (Mr. Robbins* orally) for the plaintiff.

*Charles F. Hartnett,* by brief and orally, for the defendant.

LAMPRON, J.   Action to recover for the wrongful death of Herbert Pridham arising out of events on November 1, 1971, which included a fall on defendant Cash & Carry's premises in Newington and a subsequent accident in Portsmouth involving the ambulance transporting him to a hospital because of the injuries suffered in the fall. Trial by jury, which included a view, resulted in a verdict for the plaintiff in the amount of $50,000. This verdict was reduced by $10,000, the amount of a settlement during trial of two companion cases, one against the town of Newington, owner of the ambulance, the other against the estate of its operator.

Defendant Cash & Carry preserved its exceptions to the denial of its motions for nonsuit and directed verdict; to rulings on the withdrawal of issues; to rulings in connection with the admission and exclusion of evidence; to the denial of its motions for mistrial; to the charge as given and to the denial of certain of its requests for instruction. These exceptions transferred by *Morris,* J., are the issues on this appeal.

Cash & Carry Building Center was in the retail business of selling lumber and building supplies in the manner indicated by its name. On the day of the accident plaintiff bought and paid for paneling and other supplies and he and the salesman went to the rear of the store where the paneling was kept. This was a large

showroom with two large garage-type doors at each end. All four of these doors were then open. It was windy outside and in the showroom. The paneling was stored in display racks in an upright position with a string or ropè tied around it.

The first sheet in a rack was a cover sheet used for display purposes and to keep the inside panels from being marred. Two of defendant's employees at that time testified that the purpose of the rope was to keep the sheets of paneling from falling and that it was a safety policy of the defendant to tie the rope around them for that purpose. There were about 50 sheets of vinyl paneling 4 by 8 feet each on the rack containing the type bought by Pridham. Each sheet was 3/16 of an inch thick and weighed about 8 to 10 pounds for a total weight of 400 to 500 pounds.

The clerk walked up to this rack with Pridham standing directly behind him. Without saying anything to him in the nature of a warning or otherwise, the clerk untied the rope and picked up the cover sheet and moved to one side. The remaining sheets of panel began to fall, struck Pridham, and he was knocked off his feet and thrown to the concrete floor with all the paneling on top of him. The panels closest to him broke and splintered. Pridham's heavy leather belt was broken in the process. When the panels were removed, he lay flat on his back on the floor, his head in a pool of blood.

An ambulance was called. The responding medical officer, a veterinarian, testified that the victim was conscious but was unable to move his legs or his toes when asked to do so. He was placed on an orthopedic stretcher which was in turn placed upon the ambulance cot and carried into the vehicle. En route to the Portsmouth hospital, the driver, Lawrence Volz, apparently suffered a heart attack. This caused the vehicle to swerve from the road and strike a tree. The cot was pushed forward through the glass partition separating the driving compartment from the rear of the ambulance. Pridham was pronounced dead some time later that same day. There was testimony that his death resulted from the injuries he received in the accident at Cash & Carry.

The parties agreed that Pridham was a business invitee on Cash & Carry's premises. This relationship imposed on the defendant a duty to use reasonable care not to injure the deceased by negligent activities by it or its employees. Furthermore there was a duty to warn the invitee of dangerous conditions of which he did not know and to take reasonable precautions to protect him against

foreseeable dangers arising out of the arrangements or use of the premises. These duties extended to all parts of the premises in which a business invitee may reasonably be expected. *Jutras v. Satters,* 96 N.H. 300, 75 A.2d 712 (1950); W. Prosser, Law of Torts § 61, at 392, 393 (4th ed. 1971). The actions of the clerk waiting on Pridham previously recited were sufficient evidence of negligence to submit that issue to the jury. *Partin v. A & P Tea Co.,* 102 N.H. 62, 149 A.2d 860 (1959).

There was evidence that after the clerk untied the rope holding back the paneling, that Pridham stepped on the "toe-kick", a two by six board placed at the base of the rack to hold the panels in place, and that his hands were toward the top of them. The evidence was in conflict as to whether by this move Pridham intended to examine the paneling or was trying to stop the sheets from falling. In any event the evidence as a whole would not compel a conclusion that he was negligent as a matter of law. Consequently the trial court properly denied Cash & Carry's motions for nonsuit and a directed verdict. *Stevens v. Bow Mills Methodist Church,* 111 N.H. 340, 283 A.2d 488 (1971); *Dubreuil v. Dubreuil,* 107 N.H. 519, 229 A.2d 338 (1967).

Defendant's exception to the failure of the court to withdraw the issue of improper storing of the paneling is overruled. A witness to the accident testifying about a previous experience stated that if the panel is piled too straight, the removal of the first sheet "would pull the others with it". In a deposition taken before trial, the clerk who waited on the deceased testified that he was instructed not to place the paneling straight because it would fall the minute the rope was taken off. He testified at the trial that when he took the rope off the panel fell. This was sufficient evidence to submit this issue to the jury.

Defendant also maintains that the trial court committed reversible errors in its rulings on evidence. The first is that the plaintiff was improperly permitted in violation of RSA 516:24 to impeach two former employees of the defendant called by him. Although the statute only permits impeachment of parties, it in no way prohibits a finding by the trial court that because of "hostility of the witness or other causes" such cross-examination of a witness who is not a party can be permitted. *Gerrish v. Gerrish,* 63 N.H. 128 (1884); *see* 3 J. Wigmore, Evidence § 901 (Chadbourn rev. 1970). We find no abuse of discretion under the facts of this case. Defendant also maintains that the trial court improperly permitted the admission of a prior inconsistent statement made to

defendant's manager by a former employee who was a witness called by the plaintiff pertaining to what Pridham did when the panels began to fall. This was proper. *See Whitman v. Morey,* 63 N.H. 448, 456, 2 A. 899, 904-05 (1885); 3 J. Wigmore, Evidence § 905 (Chadbourne rev. 1970).

We hold also that the trial court properly permitted a veterinarian, who responded with the ambulance as its medical officer, to give his opinion as to the condition of Pridham at the time. On the testimony presented regarding his experience and training the trial court could properly conclude that his testimony would be helpful to the jury. *Walker v. Walker,* 106 N.H. 282, 284-85, 210 A.2d 468, 472 (1965). Finally we find no error in the court's admitting in evidence on the issue of damages that there was no mortgage on decedent's home; the amount of pension and dividends which decedent was receiving in accordance with his income tax returns; and the value of his pension testified to by an expert witness possessed with evidence as to its amount and duration.

Late in the presentation of plaintiff's case a settlement was reached with the town of Newington and the driver of its ambulance, originally codefendants with Cash & Carry. Defendant claims that a mistrial should have been declared as this could have changed the issues and affected the admissibility of evidence already in the case. It also maintains that a mistrial was called for after the announcement by the court to the jury of the settlement in these terms: "It has been decided not to continue the case of Philip Pridham against the town of Newington and . . . the estate of Ethel Volz, Administrator, and we will go forward with the case . . . against Cash & Carry Building Center Inc." The trial court had been unsuccessful in obtaining an agreement by the parties on the wording of this announcement. No specific instance of prejudice has been brought to our attention. We find nothing in the record which would warrant a conclusion that the trial court abused its discretion in determining that there was no need to discontinue the trial against Cash & Carry under the circumstances. *Perry v. Faulkner,* 100 N.H. 125, 126, 120 A.2d 804, 805-06 (1956).

Defendant claims that the trial court committed error in permitting certain arguments of plaintiff's counsel to stand over objection. The first was a statement that "there are causes for all occurrences". Defendant had previously argued that the happening was a "pure accident". We do not find that the statement by

plaintiff's counsel exceeded the bounds of proper advocacy. *Stephenson v. Starks,* 112 N.H. 291, 293-94, 293 A.2d 762, 764 (1972). Counsel also argued that defendant had not presented evidence to show that it was not legally responsible. In view of the reference by both counsel to a missing rack on which the paneling was kept, we hold that this argument did not prejudice the defendant.

Defendant also excepted to the following portion of the court's charge to the jury: "The law provides that if the defendant is liable to the plaintiff-decedent in this case, he is also liable for any additional bodily harm resulting from normal efforts of third persons in rendering aid ... which the other's injury reasonably requires irrespective of whether such acts are done in a proper or in a negligent manner.

"In applying that to this case here — that is, if you find that the defendant Cash and Carry Building Center is liable to the plaintiff, the damages awarded to the plaintiff would include all injuries suffered by the decedent Pridham at Cash and Carry; and if you also find the injuries suffered in the ambulance crash were as a result of a normal effort of third persons in rendering aid which the decedent Pridham required, then the defendant would be liable to the plaintiff for those also."

Defendant maintains that the above instruction is an incorrect statement of the applicable law of damages and that it in effect directed the jury to include damages for Pridham's death if Cash & Carry was liable at all. Such a rule, it argues, confers an undeserved immunity on the town of Newington and on the driver of its ambulance and also violates the collateral source rule.

The instruction given by the trial court is based on the principle that if a tort-feasor's negligence causes harm to another which requires the victim to receive medical, surgical or hospital services and additional bodily harm results from a normal effort of persons rendering such services, whether done in a proper or negligent manner, the original tort-feasor's negligence is a legal cause of the injuries received because of the injured party's involuntary submission to such services. *Atherton v. Rowe,* 89 N.H. 196, 198, 195 A. 676, 677 (1937); *Tuttle v. Dodge,* 80 N.H. 304, 311, 116 A. 627, 632 (1922); Restatement (Second) of Torts § 457 (1965); W. Prosser, Law of Torts § 44, at 278, 279 (4th ed. 1971); *see Armstrong v. Bergeron,* 104 N.H. 85, 86, 178 A.2d 293, 294 (1962).

We have considered defendant's various objections to this rule previously stated, and the further objection that the trial court

erred in failing to enumerate in its charge the different elements of proximate, intervening and superseding causes. It is to be noted that the rule enunciated applies even if the services rendered were not negligent. In such an instance there is no issue of immunity or collateral sources. If the services are rendered negligently, the rule based on questions of policy makes the negligence of the original tort-feasor a proximate cause of the subsequent injuries suffered by the victim. *See* W. Prosser, Law of Torts § 52, at 313-14 (4th ed. 1971); Peaslee, *Multiple Causation and Damage,* 47 Harv. L. Rev. 1127, 1131 (1934). In such a case there is no need to charge the jury about the different types of causes which may come into play. The questions of immunity, collateral source payments, contribution, indemnity or subrogation argued by Cash & Carry were not in issue in this case. In so far as they are advanced by Cash & Carry against acceptance of the rule in question we do not find them convincing.

Medical services necessitated by the negligence of a tort-feasor are in most cases administered in a hospital. The conveyance of Pridham by ambulance to a hospital was a necessary step in securing medical services required by the accident at Cash & Carry. Therefore the rule holding the original tort-feasor liable for additional harm from medical care rendered because of the original injury should be extended to, and include, injuries sustained while being transported to a hospital where medical services can be obtained. *State ex rel. Smith v. Weinstein,* 398 S.W.2d 41, 44 (Mo. App. 1965); *Lucas v. City of Juneau,* 127 F. Supp. 730 (D. Alaska 1955). We hold that the charge of the trial court to that effect was proper.

Defendant maintains that the opinion of Dr. Robbins that the death of Pridham was caused by the injuries he received at Cash & Carry should have been excluded because it was based in large part on speculation, incomplete or erroneous hypothetical questions and on inadmissible or otherwise objectionable evidence. The doctor was duly qualified. He testified for the most part from findings in the autopsy report. Defendant's objections go to the weight of his evidence rather than to its admissibility and its exceptions thereto are overruled. *Canney v. Travelers Insurance Co.,* 110 N.H. 304, 306-07, 266 A.2d 831, 834 (1970).

We have considered other objections made by the defendant to the court's charge. Among them is an alleged disproportion between the statement of the duties of the parties; the failure to withdraw certain issues as requested; and the failure to instruct

the jury not to base its findings on speculation or to consider grief as an element of damages. Viewing the record and the charge as a whole we hold that the defendant did not suffer any prejudice from the alleged shortcomings of the charge. *Poulin v. Provost,* 114 N.H. 263, 265, 319 A.2d 296, 298 (1974).

*Defendant's exceptions overruled.*

All concurred.