### David J. MOONEY

v.

### UNITED STATES of America, the United States Postal Service, an agency of the United States of America.

No. 82–636–L.

United States District Court, D. New Hampshire.

Oct. 18, 1985.

Mark S. Gearreald, Engel & Morse, Exeter, N.H., for plaintiff.

Office of the U.S. Atty., Concord, N.H., for defendant.

## FINDINGS OF FACT AND RULINGS OF LAW

LOUGHLIN, District Judge.

This action arises under the Federal Tort Claims Act, 28 USC §§ 1346 (b), 2671 et seq. The plaintiff's date of birth is March 20, 1920. He is a widower and has five children. He was member of the United States Navy from June 6, 1942 until October 26, 1962. Upon his discharge from the Service, he was an employee at the Portsmouth Navy Yard for approximately nine years. On January 8, 1981 he had written a letter to his son, a member of the United States Army stationed in Korea. On that date at or about 3:00 P.M. he went into the Exeter Post Office. It had snowed the prior evening or in the early morning of January 8, 1981. The plaintiff was standing in line waiting to purchase stamps to mail the letter to his son when he went to step ahead. The next thing that he realized he was on his back. As a result of his fall, he injured his right hip and right shoulder.

He was taken to the Exeter Hospital by ambulance and treated by Dr. Edward W. King, an orthopedic surgeon. He suffered a fracture to his right femur and through open reduction, and an internal fixation, the fracture was taken care of. He was also put in a Buck's traction in order to immobilize the leg. During the operation screws were used to set the fracture and he was discharged from the hospital on January 19, 1981. He also had injury to the rotator cup of the right shoulder. He was subsequently re-admitted to the Exeter Hospital on January 29, 1982 to have the screws removed from his leg and he was discharged on January 31, 1982.

Dr. King testified that he suffered a permanent partial injury of 5% to his right leg and a similar disability to his right shoulder. It was also the opinion of Dr. King that the shoulder which had previously been injured in 1975 or 1976 was further exacerbated by the injury of January 8, 1981.

Lillian Cassier was a patron or customer of the Exeter Post Office during the mid-morning of January 8, 1981. Upon walking into the lobby of the Post Office one of her feet slipped and she noted that the floor was wet and slushy. This was about ten o'clock in the morning. She had no recollection one way or the other of whether there was a rug in the lobby area or any signs warning customers that the floor was wet.

Patrick Scanlon, also from Exeter, New Hampshire testified. He is a Post Office employee and has been for the last 7½ years. He is not employed at the Exeter Post Office but at the Manchester Post Office. On January 8, 1981 he was standing in line at the service window and the plaintiff was to the rear standing next to him. Mr. Scanlon felt something strike his right leg and it was the plaintiff who subsequently fell to the floor.

During the fall and winter of 1980, the plaintiff was seeking employment. As a result of this, he was interviewed by Bernard Cool of the New Hampshire Department of Employment Security. Due to Cool's efforts, Mooney was referred to several jobs, one of which was a custodial type job at the Indian Head Bank. A job opportunity was also available at Tyco. The hourly wage was in the vicinity of $4.00 an hour. Cool considered Mooney a good applicant.

Defendant's manual designated that during wet weather the floor should be damp mopped and safety mats layed out. This was not done on the date of the accident.

Norman T. Fecteau was the postmaster on January 8, 1981 and he saw the plaintiff on the floor. The plaintiff appeared to be in pain. In his accident report, Fecteau stated that the floor had a light water content.

It had snowed the night before and the custodian had cleaned the steps leading to the Post Office at 6:00 A.M., January 8, 1981.

The Post Office had signs warning of wet floors which were not put out on the date of the accident. Photographs were taken right after the accident and have been entered into evidence as exhibits. When floors were wet, the policy was to damp mop and then put out the mats.

Patricia Schamberger was in her first week of employment and present when the plaintiff was injured. Her hours were from 2:00 P.M. to 6:00 P.M. and she was a janitress.

According to her schedule, she was to mop the floor at 4:00 P.M.. The accident occurred between 3 and 3:30 P.M.

She testified that the walk leading into the Post Office was very clean, but the lobby was damp and dirty. The wetness of the floor was due to the tracking into the lobby by patrons of the Post Office.

She thought she saw the plaintiff fall, her recollection was that he was wiping the slush off his feet before he fell and the fall was a hard one.

In her opinion, she saw no reason to put out the signs.

Donald Wilson, an industrial engineer from Florida testified relative to Terrazo ceramic, the material that the lobby floor was made of which he stated was foreseeable as being hazardous. The first time that he examined the floor was August 21, 1985. He was first contacted to be a witness in the case in February, 1985.

John M. Hallinan, a postal employee at the Exeter Post Office on January 8, 1981 presently an employee at the Portsmouth Post Office saw the plaintiff after he fell. Plaintiff was dazed, on his left side and in pain. The floor was damp, but without snow or slush on it. Hallinan took the photographs.

The court is not specifically ruling on plaintiff's 125 requests or defendant's 116 requests, which total 241 requests, as the important and relevant facts are incorpo-

rated into this opinion. Fed.R.Civ.P. 52; *United States v. Forness*, 125 F.2d 928 (2d Cir.1942), *cert. denied*, 316 U.S. 694, 62 S.Ct. 1293, 86 L.Ed. 1764 (1942). See also *Concord General Ins. Co. v. Haynes*, 110 N.H. 76, 79, 260 A.2d 99 (1969).

■ The plaintiff has the burden of proving each element of his cause of action by a preponderance of evidence. *Zellers v. Chase*, 105 N.H. 266, 197 A.2d 206 (1964).

■ State Law determines issues of liability in actions brought under the Federal Torts Claims Act, 28 U.S.C. § 2674. *Brooks v. United States*, 695 F.2d 984 (5th Cir.1983); *Harrigan v. United States*, 63 F.R.D. 402 (D.C.Pa.1974); *Loney v. McPhillips*, 268 Or. 378, 521 P.2d 340 (1974).

Under New Hampshire law, a possessor of real estate is subject to liability for harm caused to business invitees upon the premises, if the harm results *either* from the possessor's failure to carry on its activities with reasonable care *or* from its failure to remedy or to give warning of a dangerous condition of which it knew or in the exercise of reasonable care should know. *Partin v. A & P Tea Co.*, 102 N.H. 62, 63–64, 149 A.2d 860 (1959). See *Pridham v. Cash and Carry Building Center, Inc.*, 116 N.H. 292, 359 A.2d 193 (1976).

The United States is liable in a negligence action in the same manner and to the same extent as a private individual under like circumstances but shall not be liable for interest prior to judgment or for punitive damages. 28 U.S.C. § 2674.

■ The proximate cause of the plaintiff's slip and subsequent fall was the negligence of the defendant's employee in allowing the condition of the wet floor to exist and their failure to take remedial action by drying it out by mopping, having mats in place and failure to have warning signs on the premises.

N.H. RSA 507:7a provides,

Comparative Negligence. Contributory negligence shall not bar recovery in an action by any plaintiff, or his legal representative, to recover damages for negligence resulting in death, personal injury, or property damage, if such negligence was not greater than the causal negligence of the defendant, but the damages awarded shall be diminished, by general verdict, in proportion to the amount of negligence attributed to the plaintiff; provided that where recovery is allowed against more than one defendant, each such defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed. The burden of proof as to the existence or amount of causal negligence alleged to be attributable to a party shall rest upon the party making such allegation.

■ The court finds that the plaintiff just prior to falling was in the process of or did lift one foot on the wet floor. The court finds that the proportion of negligence attributed to the plaintiff was 20 percent (20%).

■ Damages that are recoverable are determined by the law of New Hampshire. 28 U.S.C. § 2674. Components and measures of damages in Federal Tort Claims Act cases are taken from the law of the state where the tort occurred. *Ferrero v. United States*, 603 F.2d 510, *reh'g denied*, 606 F.2d 321 (5th Cir.1979).

The plaintiff received painful and serious injuries to his right hip particularly and a pre-existent injury to his right shoulder was exacerbated by the accident. As a general rule if a second injury or an aggravation of a prior one is considered to be a direct consequence or a natural result of the original injury, the original wrongdoer is held liable for the entire damage. *Armstrong v. Bergeron*, 104 N.H. 85, 86, 178 A.2d 293 (1962).

His most serious injury was an interochanteric fracture of his right hip. Plaintiff was hospitalized on two separate occasions and the evidence is uncontroverted that he suffered a great deal of pain, both physical and mental.

The evidence is also fairly pristine that the plaintiff did as a result of the accident incur a diminution in earning capacity. *Ellsworth v. Watkins,* 101 N.H. 51, 132 A.2d 136 (1957).

Plaintiff's gross earnings for the years 1981, 1982 and 1983 were $9,349.00. Conservatively, evidence was presented that the plaintiff would have grossed at least $15,000 for these three years if he had not been injured. The court finds that Mooney incurred a wage loss of at least $6,000.00.

Additionally, the evidence is uncontradicted that he now has a 5% permanent partial disability to his right lower extremity. He also suffered an aggravation of the pre-existing soft tissue injury to his right shoulder, resulting in Mr. Mooney's having a 5% permanent partial disability today in that shoulder. His average life expectancy from the date of the accident is 18.4 years.

It is the further finding of this court that, contrary to the allegations of the defendant, the plaintiff had not imbibed in any alcoholic beverages on the date of the accident. Further, this court finds that just prior to and as soon after his injury as possible, he looked for and eventually procured employment.

When the plaintiff submitted his administrative claim, the increased amount in the complaint over that presented in the administrative claim was based on newly discovered evidence not reasonably discovered at the time and proof of intervening facts. 28 U.S.C. 2675(b). *Lehner v. United States,* 685 F.2d 1187 (9th Cir.1982).

Defendant in its requests for findings of fact enumerated as 112 and 113 incorporated herein, posits as follows: the defendant, through its agent the Civilian Health and Medical Program of the Uniformed Service (hereafter referred to as. CHAMPUS) paid some or all of the medical bills originally listed in the administrative claim. CHAMPUS is a benefit program provided by the federal government, funds for which are provided by Congress to the Department of Defense. David Mooney paid no premiums or other types of contributions to CHAMPUS.

CHAMPUS refused to allow plaintiff's counsel to claim any loss on its part jointly with Mr. Mooney's claim "since the only possible source of recovery [would be] another federal agency." In essence, CHAMPUS would not be involved because the result would simply be the defendant paying the defendant a sum after deducting the third for legal fees plus expenses to David Mooney's attorney.

Champus paid approximately $6,800.14, plaintiff $2,424.20. New Hampshire has long recognized the collateral source rule. *Merchants Mutual Insurance Group v. Orthopedic Professional Association,* 124 N.H. 648, 656, 480 A.2d 840 (1984). The Government claims that any recovery awarded to Mr. Mooney should be reduced by the amount previously paid from CHAMPUS.

Under the Federal Tort Claims Act, 28 U.S.C. § 2674, the federal court is required to apply the whole law of the state where the act or omission giving rise to the cause of action occurred. *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). The law of New Hampshire recognizes the collateral source rule. *Merchants Mutual Insurance Group v. Orthopedic Professional Association,* 124 N.H. 648, 656, 480 A.2d 840 (1984); *Moulton v. Groveton Papers Co.,* 114 N.H. 505, 509, 323 A.2d 906 (1974); *Anderson v. DeLaurier,* 106 N.H. 57, 59, 204 A.2d 230 (1964); *Waumbec Mills v. Bahnson Service,* 103 N.H. 461, 464, 174 A.2d 839 (1961). "Under the collateral source rule, if a plaintiff is compensated in whole or in part for his damages by some source independent of the tort-feasor, he is still permitted to make full recovery against him." *Moulton,* 114 N.H. at 509, 323 A.2d 906.

The problem in this case, as in many cases under the F.T.C.A., is that the payments were made by the tort-feasor, i.e. the federal government. In cases such as this, the question turns on whether the source from which plaintiff's medical bills were paid is the general revenue of the federal treasury or whether it is from a "specifically funded source." *Feeley v. U.S.,* 337

**1530**

F.2d 924, 934 (3rd Cir.1964), (citing *United States v. Hayashi,* 282 F.2d 599, 603 (9th Cir.1960)). *See also Smith v. United States,* 587 F.2d 1013, 1016 (3rd Cir.1978).

In *Feeley,* the plaintiff's F.T.C.A. recovery was reduced by the value of the free hospital care provided by the Veteran's Administration because otherwise plaintiff would have received double payment out of the general treasury of the United States. *Feeley,* 337 F.2d at 933. *See also United States v. Brown,* 348 U.S. 110, 113, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954) (recovery reduced by disability payments made under Veteran's Act). Recovery under F.T.C.A. has not been reduced by payments from Social Security benefits, *Smith,* 587 F.2d at 1016, benefits under the Civil Service Retirement Act, *United States v. Price,* 288 F.2d 448 (4th Cir.1961) and benefits under Nat'l Service Life Ins., *United States v. Brooks,* 176 F.2d 482 (4th Cir.1949). Those benefits were deemed by the courts to be a "collateral source" thereby triggering the applicable state's collateral source rule.

In the present case, it is unclear whether payments made by CHAMPUS are from a specially funded source. Plaintiff's counsel admits that he has not been able to ascertain this, nor has defendant's counsel been able to shed any light on the issue.

In ascertaining damages, the court treats the issue involving payments by CHAMPUS as a case of first impression, especially in the First Circuit. The court further finds that the recovery awarded to the plaintiff should not be reduced by the amount previously awarded by CHAMPUS.

In its reasoning and findings on this issue regarding CHAMPUS in addition to the following, the New Hampshire law regarding the collateral source rule, the court rules: in serving in the United States Navy for over twenty years, the plaintiff had the reasonable expectancy that upon his retirement, he would receive full benefits due under CHAMPUS without any strings attached.

Judgment is entered for the plaintiff in the net sum of $76,000. This takes into consideration a judgment of $95,000, reduced by plaintiff's contributory negligence of twenty percent (20%) or $19,000 to $76,000. New Hampshire RSA 507:7a.

In the event that this court is found in error on appeal, relative to the collateral source rule issue regarding CHAMPUS, this being the sole error, the judgment would be as follows. Judgment for the plaintiff in the sum of $72,000 reduced by plaintiff's contributory negligence of twenty percent (20%) or $14,400 to $57,600.